332 S.E.2d 639

**Clarence SHAMBLIN, d/b/a Shamblin's Mobile Cleaning**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY.**

No. 16399.

Supreme Court of Appeals of West Virginia.

July 10, 1985.

---

Goodwin & Goodwin, Richard E. Rowe and Robert Q. Sayre, Jr., Charleston, for appellant.

John R. Fowler, Meyer, Darragh, Buckler, Bebenek & Eck, Mary S. Richards, Anita R. Casey, Charleston, for appellee.

McHUGH, Justice:

This case is before this Court upon appeal from the declaratory judgment order[1] entered on October 17, 1983, by the Circuit Court of Kanawha County, West Virginia. This Court has before it the petition for appeal, all matters of record,[2] and the briefs and oral argument of counsel.

I

On or about January 16, 1977, the appellant, Clarence Shamblin, d/b/a Shamblin's Mobile Cleaning, purchased an automobile liability insurance policy from the appellee, Nationwide Mutual Insurance Company. At all times relevant herein, the insurance policy remained in effect. In addition to covering other vehicles, the policy specifically covered the appellant's three vehicles mentioned herein. For each of these vehicles the appellant paid a separately computed premium, and coverage for each vehicle under the one policy included the following: automobile bodily injury liability—$100,000 limit for each person, $300,000 limit for each occurrence; automobile property damage liability—$50,000 limit for each occurrence.

On or about April 10, 1979, the appellant's employees, Messrs. Owens, Beller, and Haynes, were driving three of the appellant's vehicles in the scope and during the course of their employment. There was evidence that during the trip together these three drivers had communicated with each other by citizens band ("CB") radios to signal each other as to when it was clear to pass other vehicles. At a certain point during their trip Owens was advised over his "CB" radio by another driver, allegedly one of his fellow employees (Beller or Haynes), who had already passed another truck, that it was safe for Owens to pass the same. In attempting to pass the other truck Owens collided with the same and another vehicle. The driver and passenger in the latter vehicle were injured in the collision, and the driver brought a civil action for the injuries in the Circuit Court of Kanawha County, West Virginia. The jury in that action awarded the plaintiff therein $775,000.00 in damages and apportioned 90% of the liability for the same to the appellant herein.

During the pendency of the personal injury action against the appellant, the appellee informed the appellant that the automobile liability insurance policy limits for bodily injury and property damage for *each* vehicle would *not* be available to the appellant even if it were determined that more than one of the appellant's vehicles contributed to the accident. The appellant consequently commenced a declaratory judgment proceeding in the Circuit Court of Kanawha County, West Virginia, for the court to construe the insurance policy and to declare that the liability limits for *each* vehicle contributing to the accident were available to the appellant.

The trial court ruled that there was one "occurrence" within the meaning of the insurance policy and, thus, the appellee's liability to the appellant was limited to $100,000.00 for bodily injury to one person (and to $300,000.00 for bodily injury to two or more persons) for the one "occurrence."

---

1. The proceeding below was brought under the Uniform Declaratory Judgments Act, *W.Va. Code*, 55–13–1 *et seq.*, as amended.

2. On this record virtually all of the facts were stipulated.

## II

On this appeal the appellant asserts that the "occurrence clause" of the insurance policy is ambiguous and must be construed against the insurer as preparer of the document and as the party better able to sustain the financial burden. In addition, the appellant argues that the allegedly two separate acts of negligence by two of the appellant's drivers in two covered vehicles for which separately computed premiums were paid require a conclusion that there was an "occurrence" for each of the appellant's vehicles. We disagree and affirm the trial court's order.

## III

The pertinent provisions of the comprehensive automobile liability insurance policy are set forth in the footnote.[3]

The threshold inquiry is whether the insurance policy's definition of "each occurrence" ("one occurrence") is ambiguous. We conclude that it is not ambiguous, at least not in the sense meant by the appellant in this case.

In syl. pt. 1, *Surbaugh v. Stonewall Casualty Co.*, 168 W.Va. 208, 283 S.E.2d 859 (1981), this Court, quoting syl. pt. 1, *Prete v. Merchants Property Insurance Co.*, 159 W.Va. 508, 223 S.E.2d 441 (1976), set forth the test to determine whether an insurance policy provision is ambiguous so as to warrant judicial construction of the provision: " 'Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous.' " If ambiguity is found to exist, we stated in syl. pt. 2 of *Surbaugh:*

"Ambiguous and irreconcilable provisions of an insurance policy should be construed strictly against the insurer and liberally in favor of the insured, although such construction should not be unreasonably applied to contravene the object and plain intent of the parties." Syllabus point 2, *Marson Coal Co. v. Ins. Co. of State of Pa.* [158] W.Va. [146], 210 S.E.2d 747 (1974).

**3.** After setting forth in a schedule the dollar amounts mentioned in the text as the limits of liability for "each person" and "each occurrence" for the respective coverages, section I provides:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage C. bodily injury or

Coverage D. property damage

to which this insurance applies, *caused by an occurrence* and arising out of the ownership, maintenance or use ... of any automobile, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, ... but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

In section III are the following "limits of liability":

*Regardless of the number of ... (4) automobiles to which this policy applies, the company's liability is limited as follows* [emphasis added]:

Coverage C—The limit of bodily injury liability stated in the schedule as applicable to *"each*

*person"* is the limit of the company's liability for all damages ... because of bodily injury sustained by *one person* as the result of any *one occurrence* [;] but subject to the above provision respecting "each person", the total liability of the company for all damages ... because of bodily injury sustained by *two or more persons* as the result of any *one occurrence* shall not exceed the limit of bodily injury liability stated in the schedule as applicable to *"each occurrence."*

Coverage D—The total liability of the company for all damages because of all property damage sustained by one or more persons or organizations as the result of any *one occurrence* shall not exceed the limit of property damage liability stated in the schedule as applicable to *"each occurrence".*

Coverages C and D—*For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.*

(emphasis added)

Also, in the general "definitions" section of the policy, the term "occurrence" is defined to mean "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured[.]"

On the other hand, if ambiguity is not found to exist, the following well settled principle applies: " 'Where provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed.' [Syl.,] *Tynes v. Supreme Life Insurance Company of America,* [158] W.Va. [188], 209 S.E.2d 567 (1974)." Syl., *Farmers' & Merchants' Bank v. Balboa Insurance Co.,* 171 W.Va. 390, 299 S.E.2d 1 (1982).

The appellant contends that the occurrence clause in this case is ambiguous in that it is reasonably susceptible of a meaning different from that found by the trial court, specifically, two "occurrences," not one, result from allegedly two negligent acts of an insured which together cause an accident (and injuries or damage). The parties have not cited, nor has our research disclosed, any cases precisely on point.

The annotation at 55 A.L.R.2d 1300 (1957 and Later Case Service), entitled "What constitutes 'each,' 'a single,' 'one,' 'any one,' 'any,' or 'an' accident or occurrence, within liability policy limiting insurer's liability to specified amount," contains a thorough analysis of the classic dichotomy, cause v. effect; that is, some cases approach the question of whether one, or more than one, occurrence is involved from the standpoint of the insured whose action (or inaction) caused the claims to flow, while other cases view each resulting claim from the standpoint of the injured person(s), with the latter approach, of course, more apt to find more than one occurrence. For an excellent discussion of the two approaches see the leading case of *Saint Paul-Mercury Indemnity Co. v. Rutland,* 225 F.2d 689, 692 (5th Cir. 1955). *See also American Casualty Co. v. Heary,* 432 F.Supp. 995, 997 (E.D.Va.1977).

Nearly all of the reported cases, however, appear to involve either multiple impacts or multiple persons' injuries or damages from a single impact. *See Slater v. United States Fidelity & Guaranty Co.,* 379 Mass. 801, 804–08, 400 N.E.2d 1256, 1259–61 (1980). Very few of the cases appear to analyze the subject situation, that is, the allegedly concurrent negligence [4] of two employees of an insured which together constitute the proximate cause of an accident involving one impact and one person being injured.[5]

The following language is pertinent to the subject situation: "[W]hen ordinary people speak of an 'accident' in the usual sense, they are referring to a single, sudden, unintentional occurrence. They normally use the word 'accident' to describe the *event* [emphasis in original], no matter how many persons or things are involved." *Saint-Paul Mercury Indemnity Co. v. Rutland,* 225 F.2d 689, 691 (5th Cir.1955).

Also pertinent is this insightful test suggested in § 3[c] of the annotation at 55 A.L.R.2d 1300 (1957), set forth in the foot-

---

**4.** The record does not establish the negligence of the appellant's driver who signalled by CB radio that it was safe for Mr. Owens, the insured's driver involved in the collision, to pass the other truck. Instead, the record contains only a stipulation that there was an affirmative jury response to the following special interrogatory at the personal injury trial against the appellant:

Do you, the jury, find from a preponderance of the evidence *at or about the time of the accident* one or the other two Shamblin drivers, Robert Beller or Jon Haynes, told the Shamblin driver, Eddie Owens, by means of CB radio that the roadway was clear and it was all right to pass the Buske Lines, Inc. truck? (emphasis added)

Note that the jury did not find negligence on the part of Beller or Haynes but only that, at or about the time of the accident, Beller or Haynes told Owens that it was all right to pass. Whether such communication was negligence and contributed proximately to the accident would be questions of fact for the jury, and the record does not contain the answers to these questions. *See* syl. pt. 1, *White v. Lock,* 175 W.Va. 227, 332 S.E.2d 240 (1985). Thus, the foundation of the appellant's argument that there were two "occurrences" due to two negligent acts of two of the appellant's drivers is not upon solid ground. Nonetheless, even assuming *arguendo* that there were two negligent acts of two of the appellant's drivers, there was, at the most, concurrent negligence which was the proximate cause of one event, for which event liability was incurred by the appellant.

**5.** On this appeal only the one impact injuring the one plaintiff in the personal injury action against the appellant is involved.

note.[6] Thus, as stated in the annotation, the important point to be remembered when analyzing a factual situation to determine whether one, or more than one, "occurrence" is involved is the relative closeness of the connection in time and space between cause and result.

The subject insurance policy's definition of "one occurrence"—injury or damage "arising out of continuous or repeated exposure to substantially the same general conditions"—is consistent with this emphasis on closeness in time and space. This same definition was included in the liability insurance policy in *Champion International Corp. v. Continental Casualty Co.*, 546 F.2d 502 (2nd Cir.1976), in which defectively manufactured panelling was installed in 1,400 mobile homes. The court concluded that this definition was unambiguous and held that there was only one "occurrence," albeit 1,400 claims, because of the "continuous or repeated exposure." While we agree that the policy's definition of "occurrence" was unambiguous, we, like the dissent in *Champion,* believe that the incorrect result was reached on the facts therein, and, as observed by the dissent, attribute the majority's decision to a strained application of the plain terms to provide greater coverage to the insured for a series of small claims, each falling below the deductible amount if there were more than one "occurrence."

In the case before this Court there may or may not have been two antecedent negligent acts but there was only one resulting "occurrence," the event from which liability arises, namely, the collision. The subject matter of the insurance is not "cause[s]" but "liability" and the basis for liability is an event (the collision) resulting in bodily injury or property damage. "[A]n occurrence means one event, not several events, and the question here is which event is the occurrence contemplated by the policy definition. The cases have consistently construed 'occurrence' or 'accident' in liability policies to mean the event for which the insured becomes liable, and not some antecedent cause of the injury." *Champion, supra,* 546 F.2d at 508 (Newman, J., dissenting), citing, for example, *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.*, 508 F.2d 417, 419–20 (7th Cir.1975) (policy does not cover an alleged "occurrence" of negligent manufacture without resulting "property damage," but does cover negligent manufacture that results in "an occurrence" of property damage, with the damage, not the earlier inclusion of a defective component, triggering the insurer's liability to the insured).

Another case equating "occurrence" with a single liability-triggering "event," regardless of the details of how or why the event happened, is *Hartford Accident & Indemnity Co. v. Wesolowski,* 33 N.Y.2d

6. If, on the basis of the present cases, an attempt is made to reconcile the decisions regardless of the *rationes decidendi* [underscoring added] advanced in the respective opinions—simply on the facts presented—such a reconciliation can be achieved on the basis of the *closeness of connection in time and space* between the individual items of injury or damage. If cause and result are simultaneous or so closely linked in time and space as to be considered by the average person as one event, the courts have invariably found that a single accident within the meaning of the accident clause of the policy has occurred, while if enough time has elapsed between the injuries or damages to the various items involved or if the latter are widely separated in space, the courts have been inclined to allow separate claims even though they sprang from the same cause. Generally speaking, it may therefore be stated that the aggregate of events resulting from insured's

negligent act, such as several collisions, constitutes one accident, provided there is a close connection in time and place and a single sequence of cause and effect embracing the entire aggregate of events. If, on the other hand, the times or places and detailed causes of each instance of injury or damage are different, there are separate accidents although each contains a common causal factor. This test, by necessity, does not suggest a fixed and arbitrary rule of a certain permissible time interval or difference in location. It does not attempt to answer in the abstract how much time must elapse or how far apart the items must be in space before the courts will recognize the existence of separate accidents. All this test can do is to point out the relevant factors which in the past seem to have influenced the courts, at least unconsciously, in reaching their decisions. (emphasis added)

169, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973). The court therein held that there was only one "occurrence," not two occurrences, within the meaning of an automobile liability insurance policy, when an insured vehicle struck one oncoming vehicle and then ricocheted off and struck a second vehicle more than 130 feet away. The court recognized three approaches to determining whether there was one or more than one "occurrence" for liability insurance purposes: (1) looking to the proximate cause of the injuries or damages, (2) looking to the number of persons suffering a loss, and (3) looking to that one event of an unfortunate character that takes place without one's foresight or expectation and which is objectively descriptive of what happened. The court concluded that the third approach was the most practical of the three approaches. In applying this "event" test the court examined the closeness in time of the two impacts (only instants apart) and stated: "We think in common understanding and parlance there was here but a single, inseparable 'three-car accident.' " 33 N.Y.2d at 174, 350 N.Y.S.2d at 899–900, 305 N.E.2d at 910.

In like manner, there was only one "event" or "occurrence" here, the collision, both in common parlance and under the policy's definition of "occurrence." If there were two negligent acts of two of the appellant's drivers in this case, the two acts, (1) signalling to pass and (2) passing, happened, according to the jury's answer to the special interrogatory, at or about the time of the accident, and, due to the closeness in time, as concurrent negligence proximately caused the one "occurrence," the collision. Any two antecedent negligent acts do not constitute two "occurrences." The term "occurrence" in a limitation of liability clause within an automobile liability insurance policy refers unmistakably to the resulting event for which the insured becomes liable and not to some antecedent cause(s) of the injury.

The appellant's reliance on *Loerzel v. American Fidelity Fire Insurance Co.,* 281 A.D. 735, 118 N.Y.S.2d 180 (N.Y.App. Div.1952), is misplaced. In that case the plaintiff was injured in a collision between the car in which the plaintiff was riding and two trucks owned by the defendant insurance company's insured. The plaintiff first brought an action for personal injuries against the trucking company and obtained a verdict awarding damages to the plaintiff. The plaintiff thereafter brought an action directly against the trucking company's insurer for recovery of most of the verdict. The defendant paid up to the limits of liability for one person in one accident but denied liability for the remaining damages. The trial court ruled that the insurance company was liable for the remaining damages and its ruling was affirmed. The appellate court noted: "The record in this case clearly reveals that the jury found two trucks of the trucking company were involved in the accident, and both drivers were guilty of negligence in the operation thereof." 281 A.D. at 735, 118 N.Y.S.2d at 181. The court also emphasized that the "policy in question was a fleet policy, and ... was intended to cover each vehicle the same as though a separate policy had been issued therefor." *Id.* Finally, the court held that an ambiguity existed between the clause covering each vehicle and the clause limiting liability, and resolved the ambiguity against the insurer. *Id.*

*Loerzel* is clearly distinguishable from the present case. Here, the record does *not* clearly reveal the negligence of more than one of the insured's drivers. Furthermore, in this case there is no "fleet" policy making each vehicle covered by a separate policy. To the contrary, the policy herein expressly provides that the limitations of liability apply regardless of the number of automobiles covered by the policy.

This clear policy language also precludes ambiguity in this case arising from a purported conflict between the payment of separately computed premiums for each vehicle and the limitation of liability clause. When two or more automobiles are insured under a policy of liability insurance, the terms of the policy may be stated to apply separately to each automobile. That is to

say, the so-called separability provision [7] assures the policy shall apply to whichever automobile is involved in the accident [8] and it does no more. 1 R. Long, *The Law Of Liability Insurance* § 2.10 (1985). *See also* annot., 37 A.L.R.3d 1263 (1971), entitled, "Limitation Of Amount Of Coverage Under Automobile Liability Policy As Affected By Fact That Policy Covers More Than One Vehicle." In each case in this annotation the claimant contended that an ambiguity in the policy was created by inclusion of both the separability clause and the clause limiting the amount of coverage, and that coverage was not limited to the stated amount per person, but was that amount multiplied by the number of vehicles insured. In most of the cases, other than those involving uninsured motorist coverage (which are *sui generis*),[9] the insured's argument to this effect (called "stacking" coverages) was rejected and liability was held limited to the amount expressly stated in the policy.

▮ Certainly, "stacking" is to be denied when, as in the present case, there is express "anti-stacking" language ("regardless of the number of automobiles to which this policy applies") in the limitation of liability clause. *Compare Lemoi v. Nationwide Mutual Insurance Co.*, R.I., 453 A.2d 758, 760 (1982) (denied "stacking" of medical-payment benefits under one policy covering two vehicles for which separate premiums were paid, where policy's limitation of liability clause stated: "The affording of insurance to more than one person or to more than one automobile ... shall not operate to increase the limits of the Company's liability."), *with Virginia Farm Bureau Mutual Insurance Co. v. Wolfe,*

212 Va. 162, 164–65, 183 S.E.2d 145, 147 (1971) (allowed "stacking" of medical-payment benefits under one policy covering three vehicles for which separate premiums were paid, where separability and limitation of liability clauses together created ambiguity to be resolved against insurer, but recognizing that opposite holding would have been reached if limitation of liability clause had contained "anti-stacking" language identical to that in this case).

▮ When an automobile liability insurance policy contains language limiting the insurer's liability as the result of any one occurrence, "[r]egardless of the number of ... automobiles to which this policy applies," the insured is not entitled to "stack" liability coverages for each vehicle for which the insured has paid a separate premium. In light of the explicit "anti-stacking" language, the payment of a separate premium for each vehicle does not create an ambiguity in the insurance policy which should be resolved against the insurer.

*Lemoi, supra,* also disposes of the appellant's public policy argument to the effect that an insurer should not be permitted "unjust enrichment" by allowing it to limit its liability coverage available to an insured to the limit for one vehicle when separate premiums have been paid for more than one vehicle:

Nationwide should not be required to pay twice simply because it collected two ... premiums. The greater the number of vehicles, the greater the risks incurred. That the insurer charged twice for the [coverage] cannot warrant our ignoring the specific language of the limitation

---

7. The record here does not indicate any express separability provision for the comprehensive automobile liability coverage. The appellant relies, instead, on the fact that separate premiums were paid for each covered vehicle. The effect of payment of separate premiums on the limitation of liability clause is discussed in some of the cases.

8. The appellant's argument that two of his vehicles, not just one, were "involved in the accident" is, as shown above, not established factually and is invalid as a matter of law because only one vehicle was involved in the collision,

the event which is the "accident" or "occurrence" for purposes of limitation of liability.

9. Thus, *Bell v. State Farm Mutual Automobile Insurance Co.,* 157 W.Va. 623, 207 S.E.2d 147 (1974), is distinguishable. It involved uninsured motorist coverage and more than one policy. In addition, it involved a limitation of liability clause conflicting with the applicable insurance statute. Here, in contrast, comprehensive automobile liability coverage, one policy, and a limitation of liability clause not in conflict with any insurance statute are involved.

clause. A legislative policy may result in the control or regulation of such limitations or premiums charged, but there is no judicial policy that prevents an insurer from charging more when it assumes a greater risk. *Carter v. Boston Old Colony Insurance Co.*, 581 F.2d 1123, 1126 (4th Cir.1978).

453 A.2d at 761. A limitation of liability clause within an automobile liability insurance policy which limits coverage for any one occurrence, regardless of the number of covered vehicles, does not violate any applicable insurance statute or regulation, and there is no judicial policy that prevents an insurer from so limiting its liability and yet collecting a premium for each covered vehicle because each premium is for the increased risk of an "occurrence."

### IV

Based upon all of the above, the order of the trial court is affirmed.

Affirmed.