(845 P.2d 86)

No. 67,993

MID-CENTURY INSURANCE COMPANY, *Plaintiff/Appellee,* v. WALTER L. SHUTT, *Defendant,* and BAILEY PERKINS, by and through her next friend and natural guardian, LINDA S. MASON, *Defendant/Appellant.*

Opinion filed January 15, 1993. ▮

*Kurt P. Kerns* and *Patricia A. Gilman,* of Redmond, Redmond & Nazar, of Wichita, for defendant/appellant.

*E. Craig Kennedy,* of Kassebaum & Johnson, of Wichita, for plaintiff/appellee.

Before BRISCOE, C.J., GERNON, J., and RICHARD A. MEDLEY, District Judge, assigned.

GERNON, J.: This is an appeal by Bailey Perkins from a ruling that Mid-Century Insurance Company had no obligation to pay additional sums under an automobile policy issued by Mid-Century to Walter and Sandra Shutt.

Bailey Perkins, who was three and a half years old at the time of her injuries, was walking on a shoulder of the road when she was struck by an automobile driven by Tracy Shutt. Bailey sustained serious physical injuries and incurred substantial medical expenses.

The Shutts had a personal automobile insurance policy with Mid-Century which provided liability coverage on the motor vehicle driven by Tracy Shutt when she struck Bailey Perkins. The policy provided for $100,000 maximum bodily injury liability for bodily injury sustained by one person in any occurrence. Mid-

Century paid $100,000 to Linda Mason, as parent and natural guardian of Bailey Perkins, for a complete settlement and release of all claims Bailey Perkins might have against Tracy Shutt arising out of the accident. The settlement did not release Walter Shutt for any claims Perkins might have against him.

Subsequently, Bailey Perkins filed a lawsuit against the Shutts, arguing that the Shutts were personally liable for damages because of the negligent entrustment of their car to their daughter, Tracy. Perkins reached an agreement with the Shutts whereby she was granted judgment for $100,000 because of the Shutts' negligence in entrusting their car to Tracy. Under the terms of this settlement agreement, Perkins agreed not to collect the judgment from the Shutts' personal assets.

Mid-Century then filed this declaratory judgment action asking the court to determine whether Mid-Century was obligated under its policy to pay Perkins additional sums for her claim of negligent entrustment against the Shutts. Both Perkins and Mid-Century filed motions for summary judgment. The trial court denied Perkins' motion and granted summary judgment in favor of Mid-Century, holding that, while the claims of negligent entrustment on the part of the Shutts and simple negligence on the part of Tracy Shutt were "separate legal theories, . . . the damages sustained by Bailey Perkins were the result of only one occurrence and, for that reason, plaintiff's liability to Bailey Perkins is limited to the sum of $100,000.00."

The ruling had the effect of finding that Mid-Century had no further liability to Perkins because it had already paid her $100,000 for her claim against Tracy Shutt. Perkins appeals.

The question presented on appeal is whether the negligent entrustment of the automobile by the Shutts to their daughter constituted a separate occurrence from Tracy Shutt's negligence under the terms of the policy.

The policy provision in question reads as follows:

"Limits of Liability

"The limits of liability shown in the Declarations apply subject to the following:

"1. The **bodily injury** liability limit for 'each person' is the maximum for **bodily injury** sustained by one person in any **occurrence**. Any claim for loss

of consortium or injury to the relationship arising from this injury shall be included in this limit."

"Occurrence" is defined in the definitions section of the policy: "**Accident** or **occurrence** means a sudden event, including continuous or repeated exposure to the same conditions, resulting in **bodily injury** or **property damage** neither expected nor intended by the **insured person**."

The policy further states: "[W]e will pay no more than [the maximum limitation provided by this policy] regardless of the number of vehicles insured, **insured persons**, claims, claimants, or policies, or vehicles involved in the **occurrence**."

Perkins' argument is that the negligent operation of the motor vehicle by Tracy Shutt and the Shutts' negligent entrustment of that vehicle constitute two separate occurrences under the terms of the policy and applicable case law. If Perkins prevails, then Mid-Century is obligated to pay an additional $100,000 for the Shutts' liability to her for negligently entrusting the vehicle to their daughter. Perkins argues that the trial court erred as a matter of law in determining that Mid-Century was not obligated under its policy to pay any additional sums to Perkins.

"The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court." *Godfrey v. Chandley*, 248 Kan. 975, 977, 811 P.2d 1248 (1991).

Negligence and negligent entrustment are two separate legal theories. *McCart v. Muir*, 230 Kan. 618, 623, 641 P.2d 384 (1982). See *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974). "To recover for negligence, the plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered." *McGee v. Chalfant*, 248 Kan. 434, 437, 806 P.2d 980 (1991). A claim of negligent entrustment arises where an owner of an automobile loans it to a third person whom the owner knows or has reasonable cause to know is incompetent, careless, and reckless. The owner is liable to third parties who are injured by the borrower in the negligent operation of the vehicle. See *Fogo, Administratrix, v. Steele*, 180 Kan. 326, 328, 304 P.2d 451 (1956); *Priestly v. Skourup*, 142 Kan. 127, Syl. ¶ 2, 45 P.2d 852 (1935).

Neither party provides any case law on the issue of whether there were two events or occurrences which resulted in injury to Bailey Perkins.

The majority of other jurisdictions have adopted the general view that, to determine whether there is a single or multiple occurrence within the meaning of a liability insurance policy, one must look to the cause or causes of the accident or occurrence. See, *e.g., Arizona Prop. & Cas. Ins. Guar. Fund v. Helme,* 153 Ariz. 129, 735 P.2d 451 (1987); Annot., 64 A.L.R.4th 668, 673. Other jurisdictions look at the event or events which triggered liability. See, *e.g., Shamblin v. Nationwide Mut. Ins. Co.,* 175 W. Va. 337, 332 S.E.2d 639 (1985).

Perkins asks us to adopt the general rule as found in *Arizona Prop.,* where the court held that a claim that two physicians were negligent in failing to look at x-rays in connection with consultation and surgery on separate days alleged two occurrences, rather than a single occurrence, under a professional liability policy. The court recognized the general rule that "the number of causative acts, and not the number of injuries produced, determines the number of 'occurrences.'" 153 Ariz. at 135. We conclude that Perkins' reliance upon *Arizona Prop.* is misplaced due to the fact that Mid-Century's definition of "occurrence" is substantially different from the definition involved in *Arizona Prop.*

Conversely, in *Shamblin v. Nationwide Mut. Ins. Co.,* the court held that "[t]he term 'occurrence' in a limitation of liability clause within an automobile liability insurance policy refers unmistakably to the resulting event for which the insured becomes liable and not to some antecedent cause(s) of the injury." 175 W. Va. at 343.

In *Shamblin,* the insured's drivers were operating three of his vehicles in the course and scope of their employment. At some point, one of the drivers advised another by radio that it was safe to pass another vehicle. In attempting to pass this vehicle, the insured's driver collided with that vehicle and another. Noting that the subject matter of the insurance is not causes, but liability, and that the basis for liability is an event resulting in injury or damage, the court stated as follows:

"In like manner, there was only one 'event' or 'occurrence' here, the collision, both in common parlance and under the policy's definition of 'occurrence.' If there were two negligent acts of two of the appellant's drivers in this case, the two acts, (1) signalling to pass and (2) passing, happened, according to the jury's answer to the special interrogatory, at or about the time of the accident, and, due to the closeness in time, as concurrent negligence proximately caused the one 'occurrence,' the collision. Any two antecedent negligent acts do not constitute two 'occurrences.'" 175 W. Va. at 343.

Both parties cite *Manriquez v. Mid-Century Ins. Co.*, 779 S.W.2d 482 (Tex. Civ. App. 1989), as factually similar to the present case. In *Manriquez*, the widow and parents of a pedestrian killed in an automobile accident sued the driver and the driver's mother for negligence and negligent entrustment. The court held that, under the liability policy which limited Mid-Century's liability for "damages for bodily injury sustained by any one person in any one auto accident" to $50,000, Mid-Century's maximum liability for the death of the pedestrian was $50,000, even though the negligent driver and the mother who negligently entrusted her car to her son were both insured under the policy. 779 S.W.2d at 485. The language in the policy found in *Manriquez* is different from the present case, but the Shutts' policy does state that the terms "accident" and "occurrence" are interchangeable.

Perkins argues that Kansas, by implication, has adopted the cause approach. In *North River Ins. Co. v. Huff*, 628 F. Supp. 1129 (D. Kan. 1985), the insurer under a directors liability policy brought a declaratory judgment action to determine the nature and extent of its coverage for a series of bad loan transactions. The question was whether the bad loans were a part of one loan swap program or whether each bad loan was a separate transaction. The court held that "[t]hese transactions occurred at separate times, involved different borrowers, were for different purposes, and had separate collateral." 628 F. Supp. at 1133. Each loan transaction was held to be a separate occurrence under the policy. We note, however, that the liability policy in *North River* defined "occurrence" as "'any claim or claims made involving one or more insured arising out of the same act, interrelated acts, errors, omissions or scheme.'" 628 F. Supp. at 1133.

This definition is markedly different from the policy in the present case, which defines "occurrence" as "a sudden event, including continuous or repeated exposure to the same conditions," resulting in injury or damage.

Here, as in *Manriquez*, the Shutts' policy clearly states that Mid-Century will pay no more than the maximum limit of $100,000, regardless of the number of injured persons under the policy. We conclude that here there was a single event (the accident) which triggered liability and, thus, only one occurrence.

Affirmed.