## CIRCUIT COURT OF LOUDOUN COUNTY

Jeffrey R. Sabol
and Jeffrey R. Sabol,
Administrator of the Estate of
Karen S. Sabol,
Deceased

v.

American Alliance Ins. Co.
and The Travelers Ins. Co.

June 29, 1994

Case No. (Chancery) 14838

BY JUDGE THOMAS D. HORNE

Complainants instituted the instant action for declaratory relief against the American Alliance Insurance Company and Travelers Insurance Company. They seek a determination of the limits of insurance coverage available to them under the pertinent policies for the damages they sustained on April 10, 1991. On that date, a motor vehicle driven by Ernest H. Akers, Jr., and owned by his wife, Sheryl, collided with bicycles being operated by Jeffrey R. and Karen S. Sabol. As a result of being struck by the Akers' vehicle, Karen Sabol died and Jeffrey Sabol was seriously injured.

American Alliance has requested that the Court enter summary judgment in its favor and declare that, as a matter of law, its total exposure under policy number SD 2415603 issued to Akers and his wife is $200,000.00. This represents maximum limits of liability to plaintiff, Jeffrey R. Sabol, individually, and $100,000.00 to plaintiff, Jeffrey R. Sabol, as the administrator of the Estate of Karen Simmons Sabol, deceased.

Defendant Travelers Insurance Company, the underinsured carrier, has also moved for summary judgment in its favor. It suggests that the Court should, as a matter of law, declare that the maximum amount of coverage available to the Complainants under Travelers Insurance Company policy

number 916476138 101 2, issued to Jeffrey and Karen Sabol, is $100,000.00.

The Complainants have filed a cross-motion for summary judgment in which they ask that the Court declare as a matter of law that the maximum amount of coverage available to them under the American Alliance liability policy number SD 2415063 is $400,000.00. Additionally, they assert that the maximum exposure of Travelers under its underinsured policy number 916476138 101 2 is $500,000.00.

In order to determine the maximum exposure of the respective insurance carriers for the damages which Complainants sustained, the Court must examine the policies in issue and the evidence. At this stage of the proceedings, the Court is limited in its consideration of the evidence to those matters of which the Court may take notice on summary judgment. Where material issues of fact remain, the Court may not award summary judgment.

The Akers' policy with American Alliance provides coverage for bodily injury liability with limits of $100,000.00 each person and $300,000.00 each occurrence. With respect to such limitation on liability, the policy states as follows:

### Limits of Liability

The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person as the result of any one occurrence; the limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of the company's liability for all such damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence.

The Sabols' policy with Travelers Insurance provides coverage for underinsured and uninsured liability with a combined limit of $300,000.00. Condition No. 16 under Limits of Liability applies to the uninsured/underinsured motorist provision. It states:

Regardless of the number of (1) persons or organizations who are insureds under this insurance, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made

or suits brought on account of bodily injury or property damage, or (4) motor vehicles to which this insurance applies, the limit for Part III, Protection Against Uninsured Motorists, is as follows:

(b) If a single limit of liability is stated in the Declarations, the total limit of the company's liability for all damages as a result of any one occurrence shall first be the amounts required by the automobile financial responsibility or compulsory insurance law of Virginia, and then such limits shall be supplemented by any amount remaining within the limits stated in the Declarations, which limit is the total amount of the company's liability under coverages D and D2 combined for all damage as a result of any one occurrence.

Pursuant to an endorsement to the Travelers policy, the term "occurrence" is amended to read "accident."

The language of the insurance policies indicates that the amount of coverage available to the plaintiffs is dependent on the number of persons injured and the number of "occurrences," or "accidents." As counsel for American Alliance has observed, should the Court determine that the collision of the Akers vehicle with the two cyclists constituted either one or two "occurrences" within the contemplation of the policy, the limits of liability, except as to the issue of negligent entrustment, would remain the same.

There were two persons, Karen S. Sabol and Jeffrey R. Sabol, injured on that date. By the Complainants' count, there were three insurable occurrences, or accidents, linked with the events of April 10, 1991: (1) the collision of the truck driven by Ernest H. Akers with the bicycle operated by Karen S. Sabol; (2) the collision of the truck driven by Ernest H. Akers with the bicycle operated by Jeffrey R. Sabol; and (3) the negligent entrustment of the truck to Ernest H. Akers by Sheryl V. Akers. Complainants further suggest that terms "accident" and "occurrence" are synonymous within the contemplation of the Travelers policy. The Defendants assert that there was only one insurance occurrence or accident under the policies arising out of the events of April 10, 1991.

The policies of insurance clearly contemplate that a single "occurrence" or "accident" may involve injury to more than one person. Conversely, multiple acts of negligence by an insured may be the cause of a single "occurrence" or "accident." Thus, the exposure of the two insurers for the negligent acts of its insureds may be viewed in different ways.

Some courts view the effect on others to determine whether there has been more than one insurable "occurrence" or "accident." Others may look generally to the event in making such a determination. Counsel agree and the scant Virginia authority suggests that it is the causal relationship between conduct of the insureds and the injury to others to which the Court must look in deciding the number of separate insurable "occurrences" or "accidents." *American Casualty Co. of Reading, Pa. v. Heary*, 432 F. Supp. 995, 997 (E.D. Va. 1977). As the Court noted in *Heary*:

> Under the cause approach, the insured's single act of negligence is considered the occurrence from which all claims flow . . . . The cause approach is the majority view and the more modern view . . . [and that the dearth, if not absence, of Virginia law on this subject can be attributed to the] time-honored acceptance of the Bench and Bar of the cause approach. *Id.*

To the extent that the terms "occurrence" or "accident" are ambiguous, the Court will construe such terms in accord with the other provisions of the contract and the causation approach taken by the court in *Heary*. As the Supreme Court of West Virginia noted in the case of *Shamblin v. Nationwide Mutual Ins. Co.*, 332 S.E.2d 639 (W. Va. 1985), this is not a case where the rule of strict construction applicable against the insurer is otherwise necessary to a determination of the issue. The arguments over the extent of coverage center around three events. One of these was the collision which caused the death of Mrs. Sabol. A second was the striking of the bicycle operated by Mr. Sabol which led to his attendant injuries. The third was the negligent entrustment of the vehicle by Mrs. Akers to her husband which resulted in the accident and injuries to the Complainants.

Complainants reason that because two persons were injured by Mr. Akers as a result of the events of that date and that such injuries were inflicted at different times, at different points in the roadway, the injuries define separate insurable "occurrences" or "accidents" within the context of the policies. If this were the sum of Complainant's argument, then it must be rejected. Such a construction would substitute the "effect" rule for that of "causation." It appears that, while counsel for the Defendants have alluded to the resolution of the matter upon an agreed record, the arguments of the counsel for the Complainants suggest otherwise. For example, the Complainants contend that Akers failed to bring his vehicle under control after striking the first cyclist. Such a contention does not

seem justified upon the instant record. Disagreements between counsel of this kind leave doubt in the Court's mind as to the appropriateness for summary judgment.

In considering whether to grant summary judgment, the Court must adopt those inferences from the facts that are most favorable to the non-moving party, unless the inferences are strained, forced, or contrary to reason. *Carson ex rel. Meredith v. LeBlanc*, 245 Va. 135, 427 S.E.2d 189 (1993). Virginia Supreme Court Rule 2:21 requires that "summary judgment shall not be entered if any material fact is genuinely in dispute." *See Stone v. Alley*, 240 Va. 162 (1990).

In applying the "cause" standard to the facts of this case, the Court is not convinced, given the disagreement over what has been submitted by the parties, that summary judgment is appropriate as to the issue of coverage as it relates to the claims against Mr. Akers arising out of the operation of the motor vehicle. Critical facts relating to the speed of the vehicles, the distances between the bicycles, and the relative positions of the driver and the injured parties immediately prior to impact are not developed from the record or are called into question by the papers filed by the Complainants. If, however, the Court were limited in its consideration to the evidence presented, it would be inclined to grant summary judgment in favor of the carriers on this issue. For example, the following testimony of Mr. Johnston would indicate the existence of but one "occurrence" or "accident";

> Q. Now, — but you say it hit two bicyclists. You determined that later when you stopped your truck?
>
> A. Yes, sir. I didn't know how many. It could have been six. It could have been — it was — it just exploded. There was — everything was flying. (Record, p. 171.)

In another example, Mr. Sabol testified that he and his wife "were riding single file right along the white line, right up to the edge of the road . . . . We were very close to the white line, if not on the white line. That's a practice we follow." (Record, p. 131.) On the distance between the bicycles, Mr. Sabol said "[g]enerally it's within three feet." (Record, p. 167.)

When asked if there was "any custom between you and Karen with regard to what might be said, if anything, between you if one were to pass the other," Mr. Sabol testified that "normally, you say 'I'll spell you' or something." When asked if he heard "Karen say anything to you before

[the collision] occurred," he stated, "[n]o, she wouldn't have . . . because we had traffic coming up from the rear. She wouldn't have passed with oncoming rear traffic." (Record, p. 167.)

Mr. Akers testified that he was driving about 45 miles per hour. (Record, p. 246.) Such testimony of speed is to be considered with the other evidence with respect to the location of the cyclists at the time of impact and the time which a motor vehicle operator might have to avoid a second collision.

All of the above-referenced testimony is supportive of the contention of the Defendants that there was but one occurrence or accident within the contemplation of their respective policies. This testimony which was submitted for consideration touched on the factors of speed, distance, and position of the vehicles. In their papers filed in support of their motion for summary judgment, Complainants suggest the possibility of avoidance of the second collision as a result of the failure of Akers to properly control his vehicle. While not borne out in the evidence before the Court, such a suggestion would seem to suggest the need for an evidentiary hearing. It does not bespeak of an agreement that the Court has all of the evidence before it and upon which it may make such a determination.

Thus, the Court cannot conclude from this evidence alone that a reasonable fact finder, using the facts presented before the Court and applying them to the causation standard, could not find there to have been but one insurable "occurrence" within the contemplation of the policies. Nor can the Court conclude that a reasonable fact finder, applying the facts presented to the causation standard, could not find there to have been two insurable "occurrences" within the contemplation of the policies. The Court denies the motions of the Complainants and the Defendants for summary judgment on this issue.

In reaching this conclusion, the Court recognizes the difficulty Complainants may encounter in demonstrating the existence of two "occurrences," that is, the existence of two separate causes of the injuries sustained by the Sabols. The record would indicate that the collisions with the bicycles were likely separated by a fraction of a second of time and less than ten feet in space at a net speed of over thirty miles per hour. Unlike the facts in *Liberty Mutual Ins. Co. v. Rawls*, 404 F.2d 880 (5th Cir. 1968), where the Court ruled, using the "causation approach," that there were two insurable occurrences, the facts of this case do not include significant separations in time and space between collisions of a vehicle with two others. In *Rawls*, the impacts occurred between two and five seconds

apart and 30-300 feet apart. Such separations allow for the possibility that the tortfeasor committed one act of negligence and then committed a second after he was put in a position where it was possible for him to act reasonably and avoid causing another collision.

Sheryl Akers allegedly entrusted her Ford pickup truck negligently to Ernest Akers on April 10, 1991, the date of the collisions injuring Karen Sabol and Jeffrey Sabol. The Court rules as a matter of law that the alleged negligent entrustment by Sheryl Akers, if proven, does not constitute an insurable "occurrence" or "accident" under the insurance policies. As counsel have observed, should the trier of fact eventually find that Mrs. Akers was negligent in entrusting the car to Mr. Akers, they would have to determine whether or not such entrustment was the proximate cause of the accident or accidents and injuries to the Complainants in this case. If it can then be proven that the negligent entrustment is a proximate cause of the collisions, it would simply become one of several causes of the accident and injuries to the Complainants.

*Heary* directs that an insurable occurrence, under a policy of insurance, must be tied to a negligent act which caused it. However, *Heary* does not require at all the converse, that is, that each negligent act is tied to an insurable occurrence under the policy. This takes into account instances where multiple antecedent causes which proximately cause an insurance occurrence; that is, joint tortfeasors who are both insured under the same policy may contribute to one occurrence or accident within the contemplation of the policy.

Accordingly, the Court will grant the motion of the Defendants as to the limits of liability as to the claim for negligent entrustment. As to such claim, the Court finds that the exposure of the respective carriers for negligence of the insured is limited to the maximum provided for in the event the factfinder determines there to have been either one or two "occurrences" in which, through his driving, Mr. Akers injured Mr. and Mrs. Sabol. The record is devoid of any evidence that would suggest that, but for the negligence of Mrs. Akers, her husband would not have driven and the accident occurred. Such a continuous thread of causation would connect the policyholder to the compensable event, thereby, depending upon the evidence, making for either one or two "compensable events" under the terms of the respective policies.