452 S.E.2d 408

**Ervin HELMICK and Delma Helmick, Plaintiffs Below, Appellants,**

**v.**

**Stephen William JONES; Smith Ford Sales, Inc.; and American States Insurance Company, Defendants Below, Appellees.**

**No. 22036.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 1994.

Decided Dec. 8, 1994.

James M. Barber, Hunt & Barber, Charleston, for appellants.

Jeffrey M. Wakefield and Michael Bonasso, Flaherty, Sensabaugh & Bonasso, Charleston, for appellees.

PER CURIAM:

This is an appeal of an order entered July 8, 1993, in the Circuit Court of Mineral County granting summary judgment to the Appellee, American States Insurance Company (hereinafter "the Appellee" or "American"). The Appellants, Ervin Helmick and his wife Delma Helmick (hereinafter "the Appellants"), contend that summary judgment was improperly granted and that certain additional insurance coverage should be available to them. We find no error in the conclusions of the lower court and hereby affirm its decision.

I.

While test-driving a 1991 Ford Mustang owned by Smith Ford Sales, Inc. (hereinafter "Smith Ford") on August 13, 1991, seventeen-year-old Stephen William Jones struck an automobile driven by Appellant Ervin Helmick.[1] Smith Ford permitted Mr. Jones to test-drive the automobile unaccompanied by a sales representative, and Mr. Jones was operating the vehicle in excess of seventy miles per hour in a fifty-five mile per hour zone at the time of the accident. Mr. Helmick was critically injured in the collision and died approximately nineteen months later of complications stemming from the original injuries.[2]

---

1. No factual determinations were made by the lower court due to the existence of the legal question regarding insurance coverage which is the subject of this appeal. Thus, we do not attempt to develop the circumstances surrounding the accident and note only that the automobiles driven by Mr. Helmick and Mr. Jones were involved in a collision on August 13, 1991.

2. Mr. Helmick died in March 1993 and was survived by his wife and several adult children.

Smith Ford was insured by American under a garage auto policy providing liability coverage for "Garage Operations." Section IIC of the policy provided $300,000 per accident in liability coverage for "covered autos" and an additional $300,000 per accident in liability coverage for "other than covered autos."

On December 13, 1991, the Appellants filed a civil action in the Circuit Court of Kanawha County naming Smith Ford, Mr. Jones, and American as defendants. The complaint alleged that Smith Ford had negligently entrusted the automobile to Mr. Jones and that Mr. Jones had negligently injured the Appellant Mr. Helmick.[3] On July 1, 1992, a Release and Settlement Agreement was executed between the Appellants and American. American agreed to pay $300,000, the per accident limit of the "covered autos" liability coverage. The Appellants agreed to release Mr. Jones from all liability but reserved the right to pursue a declaration of coverage which might be available through the American policy with respect to the negligent entrustment of the vehicle to Mr. Jones by Smith Ford.[4]

■ At approximately the time of the settlement, the Circuit Court of Kanawha County transferred the civil action to the Circuit Court of Mineral County pursuant to the forum non conveniens doctrine. The Appellants then filed an amended complaint which asserted coverage under the "other than covered autos" language of the policy. On February 8, 1993, the Appellants filed a Motion for Summary Judgment asserting that an additional $300,000 of liability coverage was available under the "other that covered au-

tos" language. American responded with a Cross–Motion for Summary Judgment arguing that no additional liability coverage existed under the language of the policy and that American had fully discharged its obligation by payment of the $300,000. The lower court granted American's motion, and the Appellants now appeal that decision to this Court.

## II.

The policy language at issue is plain and unambiguous, abrogating our need to construe or otherwise expound upon its meaning. The language states unequivocally that the liability coverage for "covered autos" is $300,000 per accident. The language also states that the liability coverage for "other than covered autos" is $300,000. The Appellants interpret the policy to extend $300,000 in coverage under the "covered autos" language to the negligent operation of the vehicle itself. The Appellants further interpret the policy to extend an additional $300,000 in coverage under the "other than covered autos" language to Smith Ford's allegedly negligent entrustment of the vehicle to Mr. Jones.

Such interpretation and application of the policy language would be plausible but for additional language in the policy limiting the total liability of American for any single accident. The limiting language regarding the "other than covered autos" provides as follows:[5]

> Damages payable under the Each Accident Limit of Insurance—Garage Operations— Other Than Covered Autos are not payable

According to the Appellants, medical bills were approximately $175,000 at the time of his death.

3. As part of the complaint, the Appellants sought a declaratory judgment that American was obligated to provide coverage to Mr. Jones with respect to his operation of the vehicle owned by Smith Ford. American responded by acknowledging that coverage for Mr. Jones as the operator and Smith Ford as the owner did exist.

4. The parties also agree that if a determination of no additional coverage was made, the tendering of the $300,000 settlement would operate as a full satisfaction of all claims asserted against the Defendants in this matter. In addition to the

$300,000 received from American, the Appellants obtained $50,000 from Nationwide Mutual Insurance Company in liability coverage of a policy issued to Mr. Jones' father. The Appellants also received $20,000 from Nationwide representing the underinsured motorist coverage of the Appellants.

5. In the original text, various words within the following quotation, such as "auto," "garage operations," "accident," and "bodily injury" are in quotation marks due to their inclusion within a list of definitions at the conclusion of the policy. For readability, these quotation marks have been omitted in the references in this opinion.

under the Each Accident Limit of Insurance—Garage Operations—Covered Autos. Subject to the above, the most we will pay for all damages resulting from all bodily injury and property damage resulting from any one accident is the Each Accident Limit of Insurance—Garage Operations—Other Than Covered Autos for Liability Coverage shown in the Declarations.

Similarly, the limiting language regarding the "covered autos" provides as follows:

Regardless of the number of covered autos, insureds, premiums paid, claims made or vehicles involved in the accident, the most we will pay for the total of all damages and covered pollution cost or expense combined, resulting from any one accident involving a covered auto is the Each Accident Limit of Insurance—Garage Operations—Covered Autos for Liability Coverage shown in the Declarations.

Damages and covered pollution cost or expense payable under the Each Accident Limit of Insurance—Garage Operations—Covered Autos are not payable under the Each Accident Limit of Insurance—Garage Operations—Other Than Covered Autos.

The Appellants contend that this accident was the result of two separate and distinct acts of negligence which are covered under the policy by two separate and distinct liability coverages.[6] Indeed, if Smith Ford had negligently entrusted a vehicle to an individual, the policy may have provided coverage under the "other than covered autos" language. Also, if a driver of an automobile owned by Smith Ford had caused injury, the policy may have provided coverage under the "covered autos" language. However, when an attempt is made to combine those two provisions, "covered autos" and "other than covered autos," for application to the same accident, the policy does not permit recovery of both $300,000 for "covered autos" and an additional $300,000 for "other than covered autos." Each accident caused by the "covered auto" is entitled to coverage, and each accident caused by the "other than covered auto" is entitled to coverage. When negligence attributable to both the "covered auto" and the "other than covered auto" creates a single accident, however, the policy provides for the recovery of only one sum of $300,000. Simply put, the liability limits are per accident, not per act of negligence. Any contrary interpretation of the policy language would be unfounded.

▪ As we explained in syllabus point 3 of *Shamblin v. Nationwide Mutual Insurance Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985), "[t]he term 'occurrence' in a limitation of liability clause within an automobile liability insurance policy refers unmistakably to the resulting event for which the insured becomes liable and not to some antecedent cause(s) of the injury." Likewise, in the present case, the term "accident" can only be interpreted to mean the resulting injury or damage sustained rather than the various factors which may have contributed to the causation of that ultimate resulting event. Indeed, the policy defines "accident" to include "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.' "

▪ The issue of what constitutes a single accident or a single occurrence within the meaning of "per accident" liability limitations has been addressed by several jurisdictions. Some jurisdictions have held, as the Appellants would contend, that it is the number of acts producing injury, rather than the number of injuries caused, which determines the application of "per accident" coverage. *See, e.g., Arizona Prop. & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 735 P.2d 451 (1987); Michael P. Sullivan, Annotation, *What Constitutes Single Accident or Occurrence With-*

---

6. The Appellants argued, and the lower court agreed, that the negligent entrustment of a vehicle would come within the gambit of the "garage operations—other than covered autos" language. We have not been asked to pass judgment directly on that question, and the lower court ruled in favor of American despite its agreement that a negligent entrustment claim would be covered under the "garage operations—other than covered autos" language. In other words, even if that issue is resolved in favor of the Appellants, they still are not entitled to this coverage in addition to the $300,000 already received under the "garage operations—covered autos" language.

in *Liability Policy Limiting Insurer's Liability to a Specified Amount Per Accident or Occurrence*, 64 A.L.R.4th 668 (1988). However, we previously resolved this issue and explained our rationale in *Shamblin*, explaining that one occurrence, or accident in this case, regardless of the number of causative factors, is still only one occurrence for purposes of determining the insurer's liability under an automobile insurance policy which limits its liability on a "per accident" basis. 175 W.Va. at 343, 332 S.E.2d at 644.

Likewise, in *Mid–Century Insurance Co. v. Shutt*, 17 Kan.App.2d 846, 845 P.2d 86 (1993), the Court of Appeals of Kansas encountered an argument similar to that advanced by the Appellants in the present case. In *Shutt*, the policy in question defined accident or occurrence as "a sudden event, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage neither expected nor intended by the insured person." *Id.* at 848, 845 P.2d at 87. The Kansas Court held that an accident in which an automobile struck a pedestrian was only one "accident" for purposes of determining liability, despite the plaintiffs' advancement of two separate and distinct legal theories, one premised upon the driver's negligence and one premised upon the driver's parents' negligent entrustment of the vehicle to the driver. *Id.* at 851, 845 P.2d at 89; *see also Gibbs v. Armovit*, 182 Mich.App. 425, 452 N.W.2d 839 (1990); *Manriquez v. Mid–Century Ins. Co.*, 779 S.W.2d 482 (Tex.App.1989).

Based upon the foregoing, we conclude that the Appellee in the present case has already satisfied its entire obligation to the Appellants by the payment of the $300,000 in liability insurance. The lower court was correct in granting summary judgment on behalf of the Appellees, and we affirm that decision.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.