(3 P.3d 1281)

No. 80,313

Rodney Hodgson, by and through his Natural Parents, Natural Guardians, and Next Friends, Jim and Denise Hodgson, and Jim Hodgson, Individually, and Denise Hodgson, Individually, *Appellees*, v. Bremen Farmers' Mutual Insurance Company, *Appellant*.

Opinion filed July 30, 1999.

*Michael W. Murphy*, consultant to the firm of Galloway, Wiegers & Heeney, LLP, of Marysville, for appellant.

*Patrick C. Smith*, of Spigarelli, McLane & Short, of Pittsburg, for appellee.

Before Brazil, C.J., Knudson, J., and Jackson, S.J.

Jackson, J.: Rodney Hodgson was attacked by a dog, and his father, Jim Hodgson, ran to his rescue. While running, Jim slipped and fell, tearing his rotator cuff. Jim was able to free Rodney, but both Rodney and Jim underwent treatment for bite wounds, and Jim required surgery on his shoulder.

Rodney, by and through his parents, Jim and Denise Hodgson, and Jim and Denise, individually, sued the owners of the dog. The plaintiffs claimed they suffered damages as a result of defendants' negligent failure to contain the dog.

Plaintiffs and defendants settled before trial and stipulated to total damages of $50,000. The defendants' insurance policy capped liability coverage at $25,000 per occurrence. Bremen Farmers' Mutual Insurance Company (Bremen), the defendants' liability insurer, paid plaintiffs $25,000. Plaintiffs then filed a declaratory judgment action against Bremen for the balance of the stipulated damages and eventually moved for summary judgment. The plaintiffs submitted uncontroverted contentions of fact and argued the facts established two occurrences, not one.

Bremen filed its own list of uncontroverted facts, accepting the bulk of the plaintiffs' facts and listing additional facts. In one additional fact, Bremen claimed no independent act of negligence caused Jim to fall. Arguing the facts showed only one occurrence, Bremen also moved for summary judgment.

After a hearing, the trial court granted plaintiffs' motion for summary judgment. The trial court adopted by reference the uncontroverted facts as set out by both parties and the plaintiffs' brief. The trial court found the injuries were caused by "separate acts of negligence" and held the facts showed two occurrences. Bremen appeals.

Bremen first contends that the trial court erred in not finding a disputed issue of material fact. However, Bremen does not point to any disputed issue of material fact. It simply invites this court, if it finds a disputed issue of material fact, to remand the case for trial. The record does not reflect that Bremen raised any issue of material fact before the trial court, and the trial court simply adopted by reference the uncontroverted facts as set out by both parties in their motions for summary judgment. Because Bremen only raises this issue incidentally and does not argue it, the issue is deemed abandoned. See *McKissick v. Frye*, 255 Kan. 566, 578, 876 P.2d 1371 (1994).

The principal issue raised in this appeal is whether the trial court erred in holding the facts showed two occurrences as defined by

the insurance policy in question. Bremen argues the trial court erred when it held the facts showed two occurrences, not one. The usual standard of review for summary judgment does not apply here because the issue is the legal effect of a written instrument, a question of law subject to unlimited review. See *Amoco Production Co. v. Wilson, Inc.*, 266 Kan. 1084, 1088, 976 P.2d 941 (1999). An appellate court decides the issue independently of the construction given by the trial court.

An insurance policy is construed to give effect to the intention of the parties. *Brumley v. Lee*, 265 Kan. 810, 812, 963 P.2d 1224 (1998). If the policy is not ambiguous, it is enforced as made, but if it is ambiguous, it is given the construction most favorable to the insured. 265 Kan. at 812-13. "The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, Syl. ¶ 2, 934 P.2d 65 (1997). Exceptions, limitations, and exclusions are narrowly construed because the insurer "assumes the duty to define any limitations on that coverage in clear and explicit terms." *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 327, 961 P.2d 1213 (1998).

The majority of other jurisdictions count the number of occurrences by counting the causes of the damage. *Mid-Century Ins. Co. v. Shutt*, 17 Kan. App. 2d 846, 849, 845 P.2d 86 (1993). See *CSX v. Continental Insurance*, 343 Md. 216, 233, 680 A.2d 1082 (1996) (characterizing the cause test as the "vast majority"). The Court of Appeals, however, declined to apply the cause test in *Shutt*, 17 Kan. App. 2d at 850. *Shutt* quoted *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W. Va. 337, 343, 332 S.E.2d 639 (1985), which focused on " 'the resulting event for which the insured becomes liable and not . . . some antecedent cause(s) of the injury.' " 17 Kan. App. 2d at 849.

In *Shutt*, the appellant alleged that a traffic accident was caused by two negligent acts (negligence and negligent entrustment). The policy in *Shutt* used "occurrence" and "accident" interchangeably, and defined them as a " 'sudden event, including continuous or repeated exposure to the same conditions, resulting in **bodily in-**

**jury** or **property damage** neither expected nor intended by the **insured person.**' " 17 Kan. App. 2d at 848. Referring to this language, the Court of Appeals held there was only one occurrence because liability was triggered by only one event. 17 Kan. App. 2d at 851.

*Shutt* demonstrates the importance of proceeding from both the language of the particular policy and a proper understanding of the test in Kansas. The policy in the instant case provided:

"If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will: . . . pay up to our limit of liability for the damages for which the **insured** is legally liable . . . ."

Occurrence was defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: . . . **bodily injury**; or . . . **property damage.**"

Occurrence, therefore, largely was defined by equating it to an accident. Accident was not defined. Where accident is not defined, "it must be interpreted in its usual, ordinary, and popular sense," but must be given a liberal construction since it is ambiguous. *Brumley*, 265 Kan. 810, Syl. ¶ 6. As typically used, an accident is an "undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force." *Harris v. Richards*, 254 Kan. 549, Syl. ¶ 3, 867 P.2d 325 (1994).

The definition of occurrence in the instant case, when combined with the generally accepted definition of accident, is similar to the definition in *Shutt*. The analysis, therefore, focuses on the event or events which triggered liability. The instant case shows two events: the dog attack on Rodney and Jim's fall. Bremen argues Jim would not have been running but for the dog attack. While this fact would be significant for a tort analysis, it does not resolve Bremen's liability under the insurance contract. The defendants' liability under tort is not in question here.

Bremen cites *Doria v. Ins. Co. of North America*, 210 N.J. Super. 67, 509 A.2d 220 (1986). In *Doria*, two boys were playing near a

pool. One boy fell in, and the other boy tried to rescue him. The second boy fell in, and both were injured. The New Jersey court held the case presented only one occurrence (1) because the injuries resulted from a single cause, the insured's failure to properly fence in and cover the pool and (2) because of the temporal and spatial connection between the injuries. The court noted the boys entered the fence together, became exposed to the pool at the same time, were injured simultaneously, and were rescued at the same time. 210 N.J. Super. at 75-76.

The first rationale in *Doria*, the single negligent cause, is not applicable here. The *Doria* court applied the cause test. 210 N.J. Super. at 73-74. In Kansas, it is the number of events, not the number of causative negligent acts, which is dispositive. See *Shutt*, 17 Kan. App. 2d at 850-51.

*Doria* is also distinguishable on the second rationale, the temporal and spatial connection between the injuries. In the instant case, Jim was 200 feet away when Rodney was attacked, and he fell about 30 feet from Rodney. Jim and Rodney suffered different injuries and required different medical treatment. Jim continued to restrain the dog for 15 minutes after Rodney was freed. The events here were not as closely connected as were the events in *Doria*.

Bremen points to the following language in the insurance policy:

"Our total liability . . . from any one **occurrence** will not be more than the limit of liability . . . as shown in the Declarations. This limit is the same regardless of the number of **insureds**, claims made or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence**."

Bremen refers to the last sentence of the above quote as the "unifying directive." Bremen argues the unifying directive was added to its insurance policies to "codify" the result in *Doria*. The unifying directive largely repeats language from the definition of occurrence. It differs, however, in that it defines an occurrence as *either* an accident *or* continuous or repeated exposure to substantially the same general harmful conditions. This contrasts with the policy definition of occurrence, which includes continuous or re-

peated exposure to substantially the same general harmful conditions *within* the meaning of accident.

The unifying directive does not change the result in this case. First, the phrase "substantially the same general harmful conditions" is ambiguous. *Cf. St. Paul Fire & Marine Ins. Co. v. Chong,* 787 F. Supp. 183, 187 (D. Kan. 1992) (the phrase " 'series of related wrongful acts' " is ambiguous). "General" is defined as "affecting the whole" and "not confined by . . . careful limitation." Merriam Webster's Collegiate Dictionary 484 (10th ed. 1993). A reasonable policyholder would wonder at the breadth of such a provision, especially when the unifying directive makes it disjunctive with accident.

Second, construing the phrase against Bremen, the injuries suffered by Rodney and Jim did not result from exposure to the same general harmful conditions. Rodney and Jim were separated in space and time when the dog attack began. Jim had to run to the rescue because he was not in proximity to the same general harmful condition as his son. Jim was injured before he reached his son. Rodney was never in danger, by his exposure to the dog, of suffering the same injury as his father.

Bremen argues the harmful conditions were the dog's vicious nature and the fact the dog was loose. While this was certainly the condition which led to Rodney's injuries, Jim's rotator cuff was not torn by exposure to the dog's vicious nature. He was running towards the dog, not away from it. Contractual liability for Jim's injury occurred when he fell, not when the dog got loose or even when it attacked Rodney. Construed in favor of the insured, Jim's fall was a second occurrence.

In sum, because the policy was ambiguous and the facts show two events which triggered liability, the facts of the instant case present two occurrences, not one. If Bremen wished to limit its liability, it bore the burden to establish the limitation in clear and explicit terms. See *Marquis,* 265 Kan. at 327. In this instance, construing the policy in favor of the insured, the trial court did not err in finding Bremen liable for the balance of the settlement.

For the foregoing reasons, the trial court's grant of summary judgment to the appellees is affirmed.