**ERIE INSURANCE PROPERTY & CASUALTY COMPANY, Plaintiff,**

v.

**Rebecca KENEDA, Administratrix of the Estate of Robert Aaron Keneda, et al., Defendants.**

No. CIV.A. 5:00–0360.

United States District Court, S.D. West Virginia, Beckley Division.

April 26, 2001.

Kermit J. Moore, Brewster, Morhous & Cameron, Bluefield, WV, for Plaintiff.

Gary S. Wigal, Gianola, Barnum & Wigal, Morgantown, WV, for Defendant, Susan Keneda.

Pamela A. Lambert, Stephen P. New, Lambert & Associates, Gilbert, WV, for Defendants, Rebecca Keneda, Administratrix of the Estate of Robert Aaron Keneda, Christal Pearl Blankenship, Adminstratrix of the Estate of Tony Blankenship, Susan Keneda, and Robert Blankenship.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are cross-motions for summary judgment on behalf of Plaintiff Erie Insurance Property & Casualty (Erie) and Defendant Susan Keneda.[1] As discussed below, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On January 3, 2000 Robert Aaron Keneda was operating an automobile in which Tony and Robert Blankenship were passengers. A collision occurred when a 1993 Mack truck pulling a trailer crossed the center line and struck the vehicle. Robert Keneda and Tony Blankenship were killed; Robert Blankenship was injured.

The automobile driven by Robert Keneda was owned by his mother, Defendant Susan Keneda. Mrs. Keneda's vehicle was covered by a policy issued by Erie. The policy provided underinsurance coverage in the amount of $100,000.00 per person/$300,000.00 per accident. Robert Keneda owned a separate Erie policy which also provided underinsured motorist coverage of $100,000.00 per person/$300,000.00 per accident.

The liability insurer for the 1993 Mack truck paid its policy limits and Defendants filed claims for underinsurance coverage under both Erie policies. The sole question before this Court is whether the per person limit or the per occurrence limit applies to derivative claims made under the policy issued to Robert Keneda.[2]

## II. DISCUSSION

### A. Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been

1. Only Plaintiff and Defendant Susan Keneda filed dispositive motions. The remaining Defendants did not file dispositive motions and the deadline for such has expired. Accordingly, the Court deems all issues in this declaratory judgment action fully joined and ripe for resolution.

2. The parties do not appear to dispute the proposed payout under Susan Keneda's policy. Under her policy, Erie has agreed to pay the per occurrence limit of $300,000.00 as follows: the per person limit of $100,000.00 to Rebecca Keneda, Administratrix of the Estate of Robert Keneda; the per person limit of $100,000.00 to Christal Pearl Blankenship, Administratrix of the Estate of Tony Blankenship; and the per person limit of $100,000.00 to Robert Blankenship, depending on his condition post-recovery and the extent of his medical bills.

raised, we must construe all inferences in favor of the [nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Serv. Corp.*, 962 F.Supp. 75, 77 (S.D.W.Va. 1997); *Spradling v. Blackburn*, 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir.1995).

### B. Available Coverage Under Robert Keneda's Policy

The relevant provisions of the insured decedent's policy are:

If Underinsured Motorists Coverage is indicated on the **Declarations, we** will pay damages for bodily injury and property damage that the law entitles **you** or **your** legal representative to recover from the owner or operator of an **underinsured motor vehicle.**

Damages must result from a motor vehicle accident arising out of the ownership or use of the uninsured motor vehicle or underinsured motor vehicle as a motor vehicle and involve:

1. bodily injury, meaning physical harm, sickness, disease or resultant death[.]

.    .    .    .    .

If coverage is purchased on a "Split Limits" basis, **your Declarations** will show a *per* PERSON and *per* ACCIDENT limit for Uninsured and/or Underinsured Motorists Bodily Injury and a *per* ACCIDENT limit for Uninsured and/or Underinsured Motorists Property Damage. The *per* PERSON limit for Bodily Injury is the most we will pay for damages arising out of bodily injury or death to one person in any one accident. The *per* ACCIDENT limit for Bodily Injury is the most **we** will pay for damages arising out of bodily injury or death to all persons resulting from any one accident, subject to the *per* PERSON limit.

Policy No. QO1 5602318, UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDORSEMENT, pp. 1–2.

Only derivative claims are at issue in this action. *Davis v. Foley*, 193 W.Va. 595, 600, 457 S.E.2d 532, 537 (1995) ("[D]amages in a wrongful death action arise out of the death of the decedent thereby making a wrongful death action a derivative claim.") Regarding derivative claims, the policy provides:

If an individual's damages derive from, arise out of, or otherwise result from bodily injury to another person injured

in the accident or the death of another person killed in the accident, we will pay only for such damages within the *per* PERSON limit available to the person injured or killed in the accident.

Policy No. Q01 5602318, UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDORSEMENT, p. 2.

In *Davis,* the Supreme Court of Appeals of West Virginia held:

[W]hen language in an insurance policy clearly limits recovery of derivative claims to the per person limit, the per occurrence limit does not apply even though 'the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents and any persons who were financially dependent upon the decedent at the time of his or her death ...' are entitled to share in the recovery in the wrongful death action pursuant to W. Va.Code, § 55–7–6 (1992).

*Id.* at 600, 457 S.E.2d 532.

■ Defendant argues Erie's policy is ambiguous and does not "clearly limit derivative claims to the per person limit[.]" *Id.* Instead, Defendant contends Erie's use of the word "individual's" in a singular possessive form supports an interpretation that each single beneficiary is entitled to recover damages up to the per person limit.

As this Court recently recognized in *Canal Ins. Co. v. Blankenship,* 129 F.Supp.2d 950 (S.D.W.Va.2001) (Haden, C.J.):

Interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination. In the absence of ambiguity or some other compelling reason, a court applies and does not interpret the plain and ordinary meaning of an insurance contract. "Ambiguity" is defined as language "reasonably susceptible of two different meanings" or language "of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning[.]" "A court should read policy provisions to avoid ambiguities and not torture the language to create them."

*Id.* at 953 (citations omitted).

Applying the above standard, Erie's derivative claims language is not susceptible of two different meanings, nor is it of doubtful meaning. The policy language at issue clearly and unambiguously limits damages for derivative claims to the *"per* PERSON limit available to the person injured or killed in the accident." Policy No. Q01 5602318, UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDORSEMENT, p. 2. Because there is no ambiguity, the doctrine of reasonable expectations is inapplicable and may not be invoked by a beneficiary of the person killed in the accident. *See National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 742, 356 S.E.2d 488, 496 (1987).

## C. *Coverage Reduction Without a Corresponding Premium Reduction Argument*

Robert Keneda purchased his policy in May of 1990. At that time, the policy specifically provided:

If an individual's damages derive from bodily injury to another person injured in the accident, we will pay only for such derivative damages within the *per* PERSON limit available to the person injury [sic] in the accident.

[Susan] Keneda's Reply Memorandum at 8.

In 1993, Erie modified the derivative claims language, originally added in 1988, as follows:

If an individual's damages derive from bodily injury to another person injured in the accident or the death of another person killed in the accident, we will pay only for such derivative damages within the *per* PERSON limit available to the person injured or killed in the accident. (Emphasis added).

UNINSURED/UNDERINSURED MOTORIST COVERAGE ENDORSEMENT ABWUO1 9–93, p. 2.

Finally, when the accident occurred, the policy provided:

If an individual's damages derive from, **arise out of, or otherwise result from** bodily injury to another person injured in the accident or the death of another person killed in the accident, we will pay only for such derivative damages within the *per* PERSON limit available to the person injured or killed in the accident. (Emphasis added).

Policy No. QO1 5602318, UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDORSEMENT, p. 2.

■ Defendant argues the death language added in 1993 is an exclusion which, in order to be effective, required a corresponding premium reduction pursuant to West Virginia Code § 33–6–31(k). The Court disagrees. When Robert Keneda purchased the policy in 1990, the policy contained language limiting claims that derive from the *"bodily injury* to another person arising out of the accident" to the per person limit. *See* [Susan] Keneda's Reply Memorandum at 8. Bodily injury was defined by the policy as "meaning physical harm, sickness, disease or *resultant death* [.]" *See, e.g.,* UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDORSEMENTS ABWUO1 6–87, ABWUO1 7–88, ABWUO1 9–93 (Emphasis added). Under the original policy language, derivative claims aris-

ing out of bodily injury, *i.e.* physical harm, sickness, disease, or resultant death, of another person were limited to the per person limit. Erie's addition of the phrase **"or the death of another person killed in the accident"** simply clarifies that derivative claims arising out of the death of another are subject to the per person limit.

Unlike the policy at issue in *Dairyland Ins. Co. v. Westfall,* 199 W.Va. 334, 484 S.E.2d 217 (1997), the decedent's Erie policy never provided for coverage for derivative claims in excess of the per person limits. In *Westfall,* the Dairyland policy included loss of services as a separate bodily injury. Under that company's policy, each person who suffered a loss of services also suffered a separate bodily injury as defined by the policy and their claims were not derivative of the decedent's death. As such, Dairyland was required to pay each person the per person limit for their bodily injury/loss of services, up to the per occurrence limit. *Id.* at 338, 484 S.E.2d 217. Here, the Erie policy never included loss of services or loss of consortium as a separate bodily injury and, consequently, there was no basis in the policy for payment of derivative claims in excess of the per person limit, even prior to the addition of the derivative claims language, as modified in 1993.

Accordingly, the Court concludes Erie's addition of the death language in 1993 was not an exclusion requiring a corresponding premium reduction pursuant to West Virginia Code § 33–6–31(k) and therefore, the derivative claims are subject to the per person limit.

## III. CONCLUSION

Based on the foregoing, Plaintiff's motion for summary judgment is **GRANTED** and Defendant Susan Keneda's motion for summary judgment is **DENIED.** The

Court **ORDERS** this action **DISMISSED** and **STRICKEN** from the docket.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and to publish it by posting it on the Court's website at http://www.wvsd.uscourts.gov.

### *JUDGMENT ORDER*

In accordance with the Memorandum Opinion and Order entered this day, the Court **ORDERS** the case be **DISMISSED** and **STRICKEN** from the docket.

The Clerk is directed to send a copy of this Judgment Order to counsel of record.