**CANAL INSURANCE COMPANY,**
**Plaintiff,**

v.

**Christal Pearl BLANKENSHIP,**
**et al., Defendants.**

**No. CIV.A. 5:00–0143.**

United States District Court,
S.D. West Virginia,
Beckley Division.

Jan. 30, 2001.

C. William Davis, Richardson & Davis, Bluefield, WV, for Plaintiff.

Pamela A. Lambert, Stephen P. New, Lambert & Associates, Gilbert, WV, for Blankenship Defendants.

Gary Wigal, Gianola, Barnum & Wigal, Morgantown, WV, for Defendant Susan Keneda.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are cross-motions for summary judgment by 1) Plaintiff Canal Insurance Company (Canal); 2) Defendants Christal Pearl Blankenship, Rebecca Keneda, and Robert Blankenship (Blankenship Defendants); and 3) Defendant Susan Keneda. As discussed below, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendants' motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 3, 2000 Robert Keneda was operating an automobile owned by Susan Keneda in which Tony and Robert Blankenship were passengers. A 1993 Mack truck was pulling a 1998 Pitts pup trailer, which slid across the center line and struck the Keneda vehicle. Robert Keneda and Tony Blankenship were killed; Robert Blankenship was injured.

The truck pulling the trailer was driven by Larry Morgan, an employee of Daniel J. Reed, who owned the vehicles. Both truck and trailer were insured by Canal, which subsequently settled claims by Robert Blankenship and the personal representatives of the estates of Tony Blankenship and Robert Keneda for the total sum of one million dollars. The settlement released all claims against Reed and Morgan except for claims that might be satisfied by underinsurance, additional insurance coverage under the policy, if any, or any other available insurance coverage.

The sole question presented in this declaratory judgment action is whether the Canal policy on the truck and trailer limits liability coverage for this accident to one million dollars, or whether it provides a million dollars in coverage on both the truck and the trailer, making two million dollars available to Defendants.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the Court can render judgment as a matter of law. Fed.R.Civ.P. 56(c). Here, there are no issues of material fact, and the sole issue before the Court is the legal question of determining the proper coverage of the Canal liability insurance contract for Reed's truck and trailer.

1. The Blankenship Defendants assert the truck and trailer were insured under separate policies, based on their reading of applications for insurance. Canal explains additional policy numbers on the application refer to physical damage policies providing no liabili-

West Virginia substantive law controls because this is a diversity action between an insurance company resident in another state and West Virginia residents concerning a policy sold in West Virginia. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### B. The Insurance Contract

Both the truck and trailer were insured by Canal under "Basic Automobile Liability Policy" number 348429.[1] (Canal Mot. for Summ. J., Ex. 2.) The declarations page of the policy shows a combined single limit of liability of $1,000,000 for each occurrence. (*Id.*) An "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (*Id.*, Ex. 1.)

Among the endorsements, which are noted on the declarations page as being attached to the policy when issued, is endorsement E–102. It provides in pertinent part:

> Regardless of the number of ... (4) **automobiles** to which this policy applies, the company's liability is limited as follows:
>
> **Bodily Injury Liability and Property Damage Liability:**
>
> The limit of liability stated in the schedule of the policy as applicable to "each **occurrence**" is the total limit of the company's liability for all damages because of **bodily injury**, including damages for care and loss of services, or **property damages** as a result of any one occurrence[.]

(*Id.*, Ex. 4.) The limit applicable to each occurrence is one million dollars. Reed paid three thousand sixty-four dollars ($3,064.00) for this liability coverage on the

ty coverage. (*See* Pl.'s Resp. to Mots. for Summ. J. at 6.) No matter what the *application* might reflect, when policy number 348429 issued, it was written to provide liability coverage for both the truck and the trailer.

truck (including underinsured and uninsured motorist coverage) and two hundred ninety-four dollars ($294.00) for separate liability coverage on the trailer.

## C. Analysis

Defendants argue the Canal insurance policy is ambiguous regarding liability limits when two covered vehicles are involved in the same occurrence. Because both the truck and the trailer were involved in the January 3 accident, Defendants propose the beneficiaries are entitled to stack the liability coverage available under the Canal insurance policy so that the policy limit of one million dollars would apply to each vehicle involved, providing a total of two million dollars coverage.

■ "Stacking" is the multiplication of the policy limits of an insurance policy by the number of vehicles covered by that policy. It is well-settled in West Virginia "there is no common law right to stack coverage available for multiple vehicles under the same policy[.]" *Payne v. Weston*, 195 W.Va. 502, 508, 466 S.E.2d 161, 167 (1995). Rather, "the right to stack must arise from the insurance contract itself (as that is the agreement of the parties) or from a statute (as in the uninsured and under insured motorist coverage statutes)." *Id.*

■ The Canal policy contains explicit anti-stacking language, which provides (again):

> Regardless of the number of ... (4) **automobiles** to which this policy applies ... [t]he limit of liability stated in the schedule of the policy as applicable to "each **occurrence**" is the total limit of the company's liability for all damages because of **bodily injury** ... or **property damages** as a result of any one occurrence[.]

The Canal policy liability limit is one million dollars. The Supreme Court of Appeals of West Virginia previously construed limitation of liability language identical to that in the Canal policy. *See Shamblin v. Nationwide Mutual Ins. Co.*, 175 W.Va. 337, 340, n. 3, 332 S.E.2d, 639,

641, n. 3 (1985). In *Payne*, the court characterized its decision in *Shamblin* as enforcing "the *clear* anti-stacking language of the liability insurance coverage provision." *Payne*, 195 W.Va. at 508, 466 S.E.2d at 167 (emphasis added).

Defendants claim the anti-stacking language in the Canal policy is ambiguous because it' does not limit liability to one million dollars per occurrence when more than one covered vehicle is involved in the accident. They offer an alternative formulation that would limit liability "regardless of the number of vehicles involved in the accident," and suggest Canal's failure to include such language creates a policy ambiguity. (Keneda Mot. Summ. J. at 6.)

■ Interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination. *Payne*, 195 W.Va. at 506–07, 466 S.E.2d at 165–66. In the absence of ambiguity or some other compelling reason, a court applies and does not interpret the plain and ordinary meaning of an insurance contract. *Id.*, 195 W.Va. at 507, 466 S.E.2d at 166. "Ambiguity" is defined as language "reasonably susceptible of two different meanings" or language "of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning[.]" *Id.* (quoting *Shamblin*, Syl. pt. 1, 332 S.E.2d 639). "A court should read policy provisions to avoid ambiguities and not torture the language to create them." *Id.*

The Canal anti-stacking provision is not susceptible of two meanings, nor is it of doubtful meaning. It unambiguously limits Canal's liability for one occurrence to one million dollars regardless of the number of vehicles insured under the policy. Essentially, Defendants seek to introduce ambiguity by suggesting that where two or more vehicles are involved there might be more than one occurrence. Indeed, this proposition is correct, there *might* be more than one occurrence, i.e., fact situations different than the January 3 accident *might* occur. *See e.g., Liberty Mutual Ins. Co. v. Rawls*, 404 F.2d 880 (5th Cir.1968)

(finding two separate occurrences where an insured collided with one automobile, knocked it off the highway and then the insured crossed the center line and collided head-on with another vehicle); *Cf. Suh v. Dennis,* 260 N.J.Super. 26, 614 A.2d 1367 (1992) (finding only one compensable occurrence where two insured vehicles hit each other and then one of them hit another car); *Inman v. Hartford Ins. Group,* 132 Mich.App. 29, 346 N.W.2d 885 (1984) (finding one occurrence where two family-owned vehicles were racing illegally and were involved in an accident with a third vehicle).

None of the parties disputes that the January 3 accident was a single occurrence.[2] In *Shamblin* the court found a definition of "occurrence" identical to that in the Canal policy was unambiguous. *Shamblin,* 175 W.Va. at 342, 332 S.E.2d at 643. In *Shamblin,* three covered vehicles were traveling together, communicating by CB radio about when it was safe to pass other vehicles on the road. The driver of one covered car indicated the road was clear, but when a second covered car pulled out to pass, it was involved in an accident. The *Shamblin* court found there was only one occurrence and explained, "when ordinary people speak of an 'accident' in the usual sense, they are referring to a single, sudden, unintentional occurrence. . . . no matter how many persons or things are involved." *Id.* (citation omitted). Here, the parties correctly acknowledge the January 3 accident was a single occurrence.

As in *Shamblin,* the Canal policy contains identical, clear anti-stacking language limiting liability to a certain sum per occurrence regardless of the number of vehicles to which the policy applies. Defendants respond, however, that *Shamblin* is

not dispositive because the West Virginia court dealt explicitly with stacking issues in relation to the number of vehicles involved in a single occurrence in *Payne v. Weston.* Therefore, they propose *Payne* controls.

In *Payne,* beneficiaries argued that in the absence of clear anti-stacking language, "the type relied upon in *Shamblin,*" *Payne,* 195 W.Va. at 509, 466 S.E.2d at 168, they were entitled to stack the policy limits for two covered vehicles although only one was involved in the accident. The court admitted it was "quite frankly mystified" by the attempt to reach this conclusion based on *Shamblin. Id.,* 195 W.Va. at 510, 466 S.E.2d at 169. Reviewing *Shamblin,* the court reiterated, "Certainly, 'stacking' is to be denied when, as in the present case, there is express 'anti-stacking' language ('regardless of the number of automobiles to which the policy applies') in the limitation of liability clause." *Id.* (quoting *Shamblin,* 175 W.Va. at 344, 332 S.E.2d at 646).

The *Payne* court then distinguished the *Shamblin* facts from those in *Payne,* noting 1) in *Shamblin* arguably more than one insured vehicle contributed to the accident while in *Payne* only one covered vehicle was involved and 2) in *Shamblin* there was a separate premium paid for each vehicle in contrast to a multi-car discount under the *Payne* policy. Considering these facts and *Shamblin* principles, the court then held: "an insured is not entitled to stack liability coverages for every vehicle covered by his or her policy when [1] the insured received a multi-car discount, [2] when only one vehicle was involved in the accident, and [3] when the policy contains language limiting the insurer's liability." *Id.* 195 W.Va. at 512, 466 S.E.2d at 171 (numerals added).

**2.** The parties variously characterize the accident. Keneda, for example, claims that "both" insured vehicles "crossed the center line and smashed Robert Keneda's vehicle." (Susan Keneda's Mem. of Law in Supp. of her Mot. for Summ. J. (Keneda Mot. Summ. J.) at 4). The only evidence on this matter before the Court is a loss report which states "log

truck had a double trailer. The rear trailer slid[ ] across center line and struck [the Keneda vehicle]." Because there is no dispute there was only one occurrence, the Court need not resolve this question of fact as to the relative "involvement" of the truck and trailer. The fact material to the coverage issue is the single occurrence.

Defendants argue this holding confirms "when stacking liability coverage is not permitted" and cite the three conjunctive elements as jointly necessary for stacking to be disallowed. (Keneda Mot. Summ. J. at 4.) Defendants propose stacking must be allowed because the Canal policy offered no multi-car discount[3] and two covered vehicles were involved in the accident. This argument misreads the *Payne* holding, which does not say stacking is disallowed "only when" these elements are met. *Payne* is instead an instance of the general *Shamblin* anti-stacking principle that, under the facts distinguishing *Payne* from *Shamblin,* 1) a multi-car discount and 2) only one vehicle involved in the liability-limiting occurrence, stacking is *also* not allowed. Elsewhere in *Payne* the court propounds the general anti-stacking principles, which govern the decision:

> To be specific, where uninsured or underinsured coverage is not involved, stacking of liability coverage is permitted only when the insured can point to some specific policy language that authorizes stacking. . . . [I]f the trigger of coverage is an occurrence, e.g., wrongdoing by the insured, and there is only one occurrence, then stacking should not be allowed.

*Payne,* 195 W.Va. at 511, 466 S.E.2d at 170. Applying this principle: the Canal policy has no language authorizing stacking, the coverage trigger is an occurrence, there was only one occurrence, and therefore, stacking should not be allowed.

■ Defendants propose, finally, that public policy should require stacking in policies involving a vehicle and a trailer, on which a separate premium has been charged. In *Shamblin* the court explained:

> A limitation of liability clause within an automobile liability insurance policy which limits coverage for any one occurrence, regardless of the number of covered vehicles, does not violate any applicable insurance statute or regulation, and there is no judicial policy that prevents an insurer from so limiting its liability and yet collecting a premium for each covered vehicle because each premium is for the increased risk of an "occurrence."

*Shamblin,* 175 W.Va. at 344, 332 S.E.2d at 646. Defendants argue that adding the trailer did not increase Canal's risk of an occurrence. Thus, Canal received a windfall for the trailer premium with no increase in risk, and public policy should require stacking based on the separate premium. Pulling a trailer does increase risk of an occurrence, however, as demonstrated in this accident. The trailer can slide across the center line, as happened here. The trailer also adds weight, increases length, and decreases maneuverability. The truck pulling the trailer is altogether more dangerous and the risk of an occurrence is heightened when the two are joined. Additionally, the trailer alone might be involved in an occurrence if it came loose or were negligently parked. The separate premiums for the truck and trailer represent increased risk of an occurrence, do not represent a windfall for Canal, and do not violate public policy so as to require stacking.[4]

---

**3.** To claim Reed received no "multi-car discount" because none is named in the policy elevates form over function. The truck insurance cost three thousand sixty-four dollars ($3,064.00), the trailer insurance two hundred ninety-four ($294.00). A second truck, later added to the policy, was insured with the same coverage as the first truck for three thousand forty-six dollars ($3,346.00). Surely the trailer insurance is less than ten percent of the truck insurance because the trailer seldom goes out alone. The trailer's separate exposure to the risk insured is minimal.

**4.** The Court is aware of conflicting authority, but finds it neither persuasive nor on point with the facts and contract language in this action. *See Auto–Owners Ins. Co. v. Anderson,* 756 So.2d 29 (Fla.2000) (finding truck tractor and connected trailer were each a single automobile covered by motor carriers' liability insurance policy where policy defined "automobile" to include a tractor or a trailer).

■ Having considered these arguments and others, which the Court concludes are without merit,[5] the Court **FINDS** and **CONCLUDES** the Canal policy is unambiguous, it limits liability to one million dollars per occurrence, and the January 3 accident was a single occurrence. Accordingly, Canal's limit of liability for the January 3 accident is one million dollars.

### III. CONCLUSION

The Court **GRANTS** Plaintiff's motion for summary judgment. Defendants' motions are **DENIED**.

The Clerk is directed to send a copy of this Order to counsel of record and to publish it by posting on the Court's website at http://www.wvsd.uscourts.gov.

### JUDGMENT ORDER

In accordance with the Memorandum Opinion and Order entered this day, the Court **ORDERS** the case be **DISMISSED** and **STRICKEN** from the docket.

---

**5.** The cases the Blankenship Defendants cite for the proposition *West Virginia Code* § 33–6–31(k) requires a policy premium discount before limiting liability all deal with uninsured and underinsured motorist coverage. *See Mitchell v. Broadnax,* 537 S.E.2d 882 (2000); *Iafolla v. Trent,* 536 S.E.2d 135 (W.Va.2000); *Cupano v. West Virginia Ins. Guaranty Ass'n,* 207 W.Va. 703, 536 S.E.2d 127 (2000). As discussed above, the trailer premium was substantially lower, reflecting a lesser risk. Additionally, because there is no common law right to stack, it is certainly not clear that anti-stacking language is either a "limit" or an "exclusion" as referenced in subsection 31(k). Finding the cited cases in-

apposite and the principle proposed inapplicable, the Court does not reach the legal issue of whether the subsection applies to liability insurance generally.

The Blankenship Defendants also propose the reasonable expectations of the insured should govern the Court's interpretation of the insurance contract. In West Virginia, the doctrine of reasonable expectations is limited to instances in which the policy language is ambiguous. *National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 742, 356 S.E.2d 488, 496 (1987). Because the liability limitation of the Canal policy is unambiguous, Reed's expectations are irrelevant to the Court's determination.