Certiorari Granted, May 1, 2014, No, 34,607

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-055

Filing Date: February 24, 2014

Docket No. 32,426

EDWARD LUCERO, JR. and
ELAINE LUCERO,

     Plaintiffs-Appellants,

v.

NORTHLAND INSURANCE COMPANY,

     Defendant-Appellee,

APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY
Louis E. DePauli, Jr., District Judge

The Vargas Law Firm, LLC
Ray M. Vargas, II
Albuquerque, NM

O'Connell Law LLC
Erin B. O'Connell
Albuquerque, NM

Law Offices of Geoffrey R. Romero
Geoffrey R. Romero
Albuquerque, NM

for Appellants

Montgomery & Andrews P.A.
Kevin M. Sexton
Sean E. Garrett
Albuquerque, NM

for Appellee

**FRY, Judge.**

**{1}** In this case, we consider whether an insurance policy's limit of liability or anti-stacking clause restricts liability coverage to the limits applicable to only one of two covered vehicles involved in the same accident. A tractor and a trailer, each insured with liability limits of $1 million, were negligently operated by the insured's employee and collided with a vehicle being driven by Plaintiff Edward Lucero, Jr. The district court granted summary judgment to Defendant insurer, holding that the insurance policy limited liability coverage for both the tractor and the trailer to $1 million. We disagree and determine that the anti-stacking clause conflicts with the liability coverage provisions of the policy and that this ambiguity requires us to interpret the policy in favor of the insured. We therefore reverse and remand with instructions to the district court to enter summary judgment declaring the liability limits to be $2 million—$1 million for each covered vehicle involved in the accident.

## BACKGROUND

### The Accident

**{2}** The relevant facts in this case are undisputed for purposes of the motions for summary judgment. As alleged in Plaintiffs' complaint, Davis Foghorn negligently operated a tractor and trailer for Harold Hamilton and Jay B. Hamilton d/b/a H & J Hamilton (collectively referred to as Hamilton) and caused a collision with a vehicle operated by Plaintiff Edward Lucero, Jr. Mr. Lucero was injured in the accident, and Plaintiff Elaine Lucero, his wife, also alleged that she sustained damages resulting from the accident.

### The Insurance Policy

**{3}** Defendant issued an insurance policy to Hamilton that was in effect at the time of the accident, and both the tractor and the trailer involved in the accident were listed as scheduled vehicles under the policy. The declarations page of the policy states, in relevant part:

> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as Covered "Autos."

While the declarations page shows one premium amount of $24,665 for liability coverage on the covered autos, which are collectively represented by the symbol "46," Form T-434 of the policy lists the covered autos separately and shows a separate premium charge in connection with each tractor or trailer. The declarations page also shows, next to the symbol "46"—collectively representing all of the covered vehicles listed on Form T-434—combined bodily injury and property damage liability coverage with limits of liability in the amount

2

of "$1 [million] each 'accident'."

**{4}** The policy explains the liability coverage provided as follows:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

The policy also includes a provision purportedly limiting the insurance provided:

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages . . . combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

We refer to this provision as the anti-stacking clause because the concept of stacking involves the aggregation of policy limits applicable to multiple insured vehicles and because this provision seeks to preclude such aggregation. *See Sanchez v. Herrera*, 1989-NMSC-073, ¶ 12, 109 N.M. 155, 783 P.2d 465 ("Stacking involves adding the maximum coverage under one policy to the maximum of a second policy until the insured's damages are fully compensated or his or her combined policy limits are exhausted.").

**The Lawsuit**

**{5}** Plaintiffs sued Foghorn, who was the driver of the tractor-trailer, Foghorn's employers, and Defendant for damages resulting from the accident and for a declaratory judgment that Defendant "is required to extend liability coverage in a minimum amount of $2 [million], or $1 [million] per vehicle." Defendant counterclaimed for a declaratory judgment that "the limits of liability for this accident are $1 [million]." Plaintiffs and Defendant filed cross-motions for summary judgment on the issue of the policy limits available under the policy. During the briefing process, the parties jointly moved for dismissal of all claims against all defendants other than Defendant Northland, and the district court accordingly entered a stipulated order of dismissal. Thus, the only issue remaining in the lawsuit was the amount of liability coverage provided by the policy. Plaintiffs and Defendant stipulated that Plaintiffs' damages exceed $2 million, and Defendant tendered the undisputed $1 million in coverage[1].

**{6}** Among other contentions, Plaintiffs argued in their motion for summary judgment

---

[1]We assume that the insureds under the policy, the Hamiltons and their company, assigned their rights under the policy to Plaintiffs. Thus, Plaintiffs stand in the shoes of the insured.

3

that the tractor and trailer were two separate vehicles, that the policy unambiguously provided $1 million in liability coverage for each vehicle involved in an accident, and that the anti-stacking clause was inapplicable because Plaintiffs are not seeking classic stacking of coverages but, rather, the coverage purchased by the insured for each vehicle involved. In its motion for summary judgment, Defendant contended in relevant part that the policy unambiguously limited liability coverage to $1 million per accident and that, if there were any doubt about this, the anti-stacking clause in the policy established that only one liability coverage in the amount of $1 million would be available for any single accident.

{7}     The district court granted Defendant's motion for summary judgment, relying in large part on the Florida case of *Auto-Owners Insurance Co. v. Anderson*, 756 So. 2d 29 (Fla. 2000). The court stated that "the limiting language in [Defendant's] policy clearly and unambiguously explains that [the] liability coverage is limited to $1 million 'regardless' of the number of covered vehicles involved in the crash. This finding renders the issue of whether the tractor and trailer are separate vehicles irrelevant." This appeal followed.

**DISCUSSION**

**1.     Standard of Review**

{8}     The parties do not dispute the material facts for purposes of this appeal, and the propriety of the summary judgment in favor of Defendant presents a question of law that we review de novo. *Slack v. Robinson*, 2003-NMCA-083, ¶ 7, 134 N.M. 6, 71 P.3d 514. The interpretation of an insurance policy and the determination of whether a policy is ambiguous are questions of law. *Id.* ¶ 8.

{9}     We consider the policy as a whole to determine the intent of the parties. *Id.* If the language of the policy is clear and unambiguous, we apply the terms without construction or interpretation. *Id.* On the other hand, if a policy provision is ambiguous, "it will usually be construed against the insurance company as the drafter of the policy." *Id.* "Ambiguities arise when separate sections of a policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 11, 129 N.M. 698, 12 P.3d 960 (alteration, internal quotation marks, and citation omitted).

**2.     Plaintiffs' Arguments**

{10}     Plaintiffs make three primary arguments in support of their contention that the district court misinterpreted the insurance policy. First, they maintain that the policy's plain language provides $1 million in liability coverage for each covered vehicle involved in an accident and, consequently, because two covered vehicles were involved in this accident, Defendant must pay up to $2 million for damages sustained in the accident. They argue that the anti-stacking clause is inapplicable because this is not a stacking case in the established

sense of the term, which means combining the coverage of vehicles *not* involved in the accident at issue. Second, Plaintiffs contend that if the anti-stacking clause does apply in this case, it is ambiguous because it does not indicate that there is no coverage for two covered vehicles that are involved in the same accident. Thus, they maintain, the ambiguity must be construed in their favor and against the drafter, Defendant. Third, they argue that the district court's interpretation of the anti-stacking clause violates New Mexico public policy, which requires each licensed vehicle in the state to have its own liability coverage. Because we agree with Plaintiffs' first two arguments, we need not address the third.

**{11}** The policy provides $1 million in coverage for each covered vehicle, and the tractor and trailer involved in this accident were separately covered vehicles. Because both the tractor and the trailer were involved in the same accident, Defendant's limits of liability are $2 million. The anti-stacking provision is inapplicable because the circumstances in this case do not constitute stacking in the ordinary sense of the term. In addition, even if the anti-stacking provision arguably applied in this case, it conflicts with the liability coverage provision of the policy, which means that it is ambiguous. We therefore construe the provision in favor of Plaintiffs so that it gives effect to the insured's reasonable expectations.

### 3. The Policy Provides $1 Million in Coverage for Each Vehicle Involved in the Accident

**{12}** A review of the policy in this case establishes that the insured intended to purchase, and Defendant intended to provide, $1 million in liability coverage for each covered vehicle the insured owned. As previously noted, in the section describing liability coverage, the policy states, "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." The policy then defines "[i]nsured" as "You for any covered 'auto'." The policy, through reference to three different sections, defines "[c]overed '[a]utos'" as the vehicles represented by the symbol "46," which stands for eleven specifically identified vehicles, including both the tractor and the trailer involved in the accident. A premium is listed next to the number of each specifically listed vehicle.

**{13}** It is clear that the insured in this case is legally obligated to pay damages, per the parties' stipulation, because of bodily injury caused by an accident resulting from the ownership or use of the tractor *and* the trailer operated by the insured's employee. Reading the sections of the policy together, these circumstances fit the definition of what Defendant agreed in the policy to pay in liability coverage. As for the amount of coverage Defendant is obliged to pay, the declaration page states that "*[e]ach* of these coverages will apply only to those 'autos' shown as Covered 'Autos'." (Emphasis added.) Under this statement, the declarations page shows the symbol "46," representing the specifically listed "Covered 'Autos'," and the amount of "$1,000,000 each 'accident'." It follows that each vehicle involved in an accident that is a "Covered 'Auto'" carries $1 million in liability coverage. As a result, Defendant is obligated to provide $1 million in coverage for the tractor involved

5

in the accident and $1 million in coverage for the trailer involved in the same accident, for a total of $2 million in coverage.

**{14}** Defendant asserts two primary arguments against this interpretation of the policy. First, it maintains that New Mexico and federal law dictate that a tractor and trailer operated in tandem constitute one vehicle. Second, it contends that the anti-stacking provision of the policy expressly precludes aggregating more than one vehicle's liability coverage. We are not persuaded.

**a.    The New Mexico Motor Carrier Act and Federal Law Do Not Dictate That a Tractor and Trailer in Combination Constitute One Vehicle**

**{15}** Defendant relies on the definition of "motor vehicle" in the New Mexico Motor Carrier Act, NMSA 1978, §§ 65-2A-1 to -40 (2003, as amended through 2013). The version in effect at the time of this litigation defined motor vehicle as "a vehicle, machine, tractor, trailer or semitrailer propelled or drawn by mechanical power and used on a highway in the transportation of property or persons, but does not include a vehicle, locomotive or car operated exclusively on rails." Section 65-2A-3(DD) (2005). Defendant claims that because the semitrailer involved in this accident is not "'propelled or drawn by mechanical power' without first being attached to a tractor, it is not, by itself, a 'motor vehicle' under New Mexico law."

**{16}** We reject this argument for two reasons. First, Section 65-2A-3(DD) (2005) appears to define a trailer as a motor vehicle because it is "*drawn* by mechanical power and used on a highway in the transportation of property or persons." (Emphasis added.) Nothing in the language suggests that a tractor and trailer that are connected to each other constitute one motor vehicle. Second, the Motor Vehicle Act was enacted "to foster the development, coordination and preservation of a safe, sound and adequate motor carrier system." Section 65-2A-2. It does not appear to place any limitations on the terms of liability insurance contracts, and the express terms of the policy in question define a trailer as an "[a]uto."

**{17}** Defendant also relies on a federally mandated endorsement to the policy, which defines a "[m]otor [v]ehicle" as "a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, *or any combination thereof*." (Emphasis added.) Defendant maintains that the italicized language establishes that, "while the trailer may qualify as a separate vehicle when not connected to a tractor, it becomes a single motor vehicle when combined with a tractor." We disagree with this strained interpretation of the endorsement's language. A reasonable reading of the language is that each tractor and trailer is a motor vehicle for purposes of the endorsement *and* that a combination of a tractor and trailer is *also* a motor vehicle. Nothing in this language changes the terms of the policy itself.

**b.    The Anti-Stacking Clause Does Not Apply Under These Circumstances**

6

**{18}** We are equally unpersuaded by Defendant's argument that the anti-stacking provision in the policy precludes the payment of $1 million for each covered vehicle involved in this accident. This is because Plaintiffs are not seeking "stacking" as that term is generally understood.

**{19}** Cases from other jurisdictions have defined "stacking" as the "combining or aggregating [of] the policy limits applicable to more than one vehicle *where the other vehicles are not involved in the accident*." *Progressive Premier Ins. Co. of Ill. v. Kocher ex rel. Fleming*, 932 N.E.2d 1094, 1098 (Ill. App. Ct. 2010) (emphasis added); *see Anderson*, 756 So. 2d at 35 ("Stacking of coverages occurs when coverage from vehicles *not involved in the accident* is sought to be added to the coverage for the vehicle involved in the accident."). Although New Mexico cases have not strictly defined stacking as applying to vehicles not involved in the accident at issue, they have applied stacking only to cases having those circumstances. *See Ponder*, 2000-NMSC-033, ¶ 10 ("Stacking refers to an insured's attempt to recover damages in aggregate under more than one policy or one policy covering more than one vehicle until all damages either are satisfied or the total policy limits are exhausted." (internal quotation marks and citation omitted)). In other words, our courts have applied stacking of *all* covered vehicles' medical payments coverages and uninsured/underinsured motorist (UM/UIM) coverages in circumstances where only one covered vehicle was involved in the accident. *See, e.g.*, *Rodriguez v. Windsor Ins. Co.*, 1994-NMSC-075, ¶¶ 1, 3, 20, 118 N.M. 127, 879 P.2d 759 (allowing stacking of all UM/UIM coverages, including coverages on vehicles not involved in the accident), *modified on other grounds by Montano v. Allstate Indem. Co.*, 2004-NMSC-020, 135 N.M. 681, 92 P.3d 1255; *Vigil v. Cal. Cas. Ins. Co.*, 1991-NMSC-050, ¶¶ 1-3, 112 N.M. 67, 811 P.2d 565 (allowing stacking of medical payments coverages, including coverages on vehicles not involved in the accident). And in the only New Mexico case addressing the stacking of liability coverages, the question before the Court was whether an insured driving a non-owned rental car could aggregate the liability coverages on all of his insured vehicles, none of which were involved in the accident. *See Slack*, 2003-NMCA-083, ¶¶ 2-5. We are therefore satisfied that stacking involves the aggregation of coverages applicable to vehicles not involved in the accident in question, which is not what Plaintiffs seek in the present case. *See* 12 Steven Plitt, et al., *Couch on Insurance* § 169:109 (3d ed. 2013) ("Recovery may also be had under multiple policies or multiple vehicle liability coverages under rationales *other than stacking*, primarily where the insured can be found negligent as to the operation of each vehicle insured." (emphasis added)). Where an insured seeks full liability coverage for each insured vehicle involved in the same accident, "[it] is not a true stacking case in the traditional sense." *Kocher*, 932 N.E.2d at 1101.

**{20}** Instead of seeking stacking, Plaintiffs seek the enforcement of the intent of their specific contract and a determination that it provides liability coverage for both covered vehicles involved in the accident. When the policy is read as a whole, it is clear that the insured intended to purchase $1 million in coverage for every listed vehicle in the event that the vehicle was involved in an accident and if it was ultimately determined that the insured operator of the vehicle was responsible for damages. It is equally clear that Defendant

7

intended to preclude stacking—the aggregation of coverages applicable to vehicles *not* involved in the accident in question. But the policy language used to prevent stacking does not apply to covered vehicles that are both involved in an accident. Certainly, if the operators of two covered vehicles were responsible for two different accidents, the insured and Defendant would expect there to be $1 million in liability coverage for each vehicle. Therefore, it does not make sense that the parties would expect there to be only $1 million in coverage if the two covered vehicles were involved in the same accident and if the operator of each vehicle was partially responsible for any resulting damages. *See Slack*, 2003-NMCA-083, ¶ 24 (explaining that "liability coverage follows the vehicle").

**{21}** In any event, if the anti-stacking clause is read to preclude liability coverage on one of the covered vehicles involved in this accident, then the clause conflicts with the liability coverage provisions of the policy. This leads us to a discussion of ambiguity in the policy.

**c.** **Applying the Anti-stacking Clause to the Circumstances of This Case Creates an Ambiguity in the Policy That Must Be Construed in Favor of the Insured**

**{22}** A policy provision is ambiguous "when separate sections of a policy appear to conflict with one another." *Ponder*, 2000-NMSC-033, ¶ 11 (internal quotation marks and citation omitted). There is conflict in this policy because, on the one hand, the liability coverage provisions state that each covered vehicle is entitled to $1 million in coverage, and, on the other hand, the anti-stacking clause (if interpreted as Defendant urges) eliminates the $1 million in liability coverage applicable to one of the covered vehicles involved in the accident. The declarations page describes the liability coverage provided. It refers to a separate listing of covered autos, which in turn shows a separate premium paid for each listed vehicle, and each listed vehicle is provided $1 million in coverage. The anti-stacking clause, interpreted as advocated by Defendant, eliminates all liability coverage available to one of the two vehicles involved in the accident. We are unable to give effect to the anti-stacking clause under this interpretation without eviscerating the liability coverage for one of two insured vehicles. Thus, the policy is ambiguous.

**{23}** "[T]he insurer has the responsibility of issuing an intelligible policy. If the insurer issues an ambiguous policy, the ambiguities are construed against the insurer." *Rodriguez*, 1994-NMSC-075, ¶ 14. "[T]he test is not what the insurer intended its words to mean, but what a reasonable person in the insured's position would have understood them to mean." *Id.* ¶ 12 (internal quotation marks and citation omitted). Under the circumstances of this case, a reasonable person in the insured's position would have understood the policy to provide $1 million in liability coverage for each covered vehicle that is involved in an accident if the operator of each vehicle is found to be responsible for damages. Such a reasonable person could not have anticipated that the mere happenstance of two covered vehicles being involved in the same accident would result in the complete elimination of liability coverage on one of the vehicles.

**{24}** We are not persuaded by the out-of-state authority relied on by Defendant. In our

8

view, the courts in those cases faced different factual scenarios or they failed to appreciate the inherent conflict between an anti-stacking clause and liability coverage provisions. *See, e.g.*, *Shamblin v. Nationwide Mut. Ins. Co.*, 332 S.E.2d 639, 645 n.8 (W.Va. 1985) (rejecting argument for aggregation of liability coverages because "[t]he [insured's] argument that two of his vehicles, not just one, were 'involved in the accident' is . . . not established factually and is invalid as a matter of law because only one vehicle was involved in the collision"); *State Auto Ins. Co. v. Stinson*, 1998 WL 124051, *5 (6th Cir. 1998) (reading anti-stacking clause in isolation from the rest of the policy and rejecting the argument that the insureds reasonably expected that each vehicle would be individually covered because the insurer "should not be required to pay twice simply because it collected two premiums").

**{25}** We are equally unpersuaded by the district court's reliance on the *Anderson* case. The court in *Anderson* referred in dicta to anti-stacking clauses similar to that in the present case and suggested that such clauses expressly prohibit the aggregation of liability coverages for two insured vehicles involved in the same accident. 756 So. 2d at 36. This suggestion was dicta because the court actually held that the anti-stacking clause before it (which was worded somewhat differently from the clause in the case before us) was ambiguous and, therefore, that the covered tractor and trailer involved in the accident were each entitled to coverage in the amount of the limits of liability. *Id.* at 31, 35. Thus, the holding in *Anderson* actually supports the aggregation of liability coverages when two covered vehicles are involved in the same accident.

**{26}** The district court seized upon the dicta in *Anderson* to support its grant of summary judgment to Defendant. We are not persuaded to rely on this aspect of *Anderson* for three reasons: (1) we believe that the anti-stacking clause in the policy at issue here was intended to address the aggregation of coverages on vehicles *not* involved in the accident in question, which is not the factual scenario in this case; (2) the anti-stacking clause in this case conflicts with the liability coverage portions of the policy; and (3) we see no reason to give inordinate deference to dicta in an opinion of the Florida Supreme Court.

**{27}** We conclude that the reasonable expectations of the insured under this policy were that it would provide $1 million in liability coverage for each covered vehicle involved in an accident, even if it was the same accident. We therefore reverse summary judgment in favor of Defendant and remand with instructions to the district court to enter summary judgment in favor of Plaintiffs.

**CONCLUSION**

**{28}** For the foregoing reasons, we reverse the summary judgment in favor of Defendant and remand for proceedings consistent with this Opinion.

**{29}    IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____

**TIMOTHY L. GARCIA, Judge**

_____

**J. MILES HANISEE, Judge**

**Topic Index for** *Lucero v. Northland Ins. Co.*, **No. 32,426**

**APPEAL AND ERROR**
Remand
Standard of Review

**CIVIL PROCEDURE**
Summary Judgment

**INSURANCE**
Motor Vehicle Insurance
Stacking