# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date: March 26, 2015**

**NO. 34,607**

**EDWARD LUCERO, JR., and**
**ELAINE LUCERO,**

Plaintiffs-Respondents,

v.

**NORTHLAND INSURANCE COMPANY,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Louis E. Depauli, Jr., District Judge**


Montgomery & Andrews, P.A.
Kevin M. Sexton
Andrew S. Montgomery
Santa Fe, NM

for Petitioner


O'Connell Law, L.L.C.
Erin B. O'Connell
Albuquerque, NM

Law Offices of Geoffrey R. Romero

Geoffrey R. Romero
Albuquerque, NM

The Vargas Law Firm, L.L.C.
Ray M. Vargas, II
Albuquerque, NM

for Respondents

Butt, Thornton & Baehr, P.C.
Paul Trafton Yarbrough
Jane A. Laflin
Albuquerque, NM

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Thomas A. Outler
Seth L. Sparks
Albuquerque, NM

Civerolo, Gralow, Hill & Curtis, P.A.
Lance Dean Richards
Albuquerque, NM

for Amici Curiae American Trucking Associations, Inc., Trucking Industry
Defense Association and New Mexico Trucking Association

**OPINION**

**BOSSON, Justice.**

{1}     A trucking company purchased a liability insurance policy covering each of its several tractors and trailers. The policy stipulated that liability coverage would be limited to "$1,000,000 each 'accident.'" A tractor-trailer rig insured under the policy was involved in a single accident. The question before us is whether $1,000,000 is the limit per accident for both vehicles (the tractor and the trailer) or whether each vehicle has liability coverage in the amount of $1,000,000. The district court interpreted the policy to limit its coverage to $1,000,000; our Court of Appeals disagreed and reversed. Because this dispute affects not only the parties to this lawsuit but arguably New Mexico's place among the many jurisdictions that have grappled with similar policy language, we granted certiorari and now reverse the Court of Appeals.

**BACKGROUND**

{2}     The facts in this case are undisputed. The Luceros were severely injured when their vehicle was hit by a tractor-trailer negligently driven by an employee of H & J Hamilton Trucking Company, insured by Defendant Northland Insurance Company. Northland defended Hamilton in the ensuing lawsuit. Eventually, Northland stipulated to liability, and the Luceros agreed to dismiss all claims against Northland

and its insured in exchange for a settlement in the amount of policy limits.

{3} The parties disagreed, however, as to the policy limits. Before the district court, the parties filed cross-motions for summary judgment seeking to answer this question. Northland maintained that its insurance policy limits liability to $1,000,000 for each accident, an amount it tendered to the Luceros. The Luceros, on the other hand, interpreted the policy as providing $1,000,000 for each covered auto. Hamilton's tractor and trailer are both covered autos under the policy, so the Luceros sought $1,000,000 for each, or $2,000,000 for both. The district court agreed with Northland's reading of the insurance policy and granted summary judgment for $1,000,000. The Court of Appeals reversed, agreeing with the Luceros. *See Lucero v. Northland Ins. Co.*, 2014-NMCA-055, ¶¶ 1, 27, 326 P.3d 42.

**DISCUSSION**

{4} Because the insurance policy before us involves liability coverage, we interpret the policy "in accordance with the same principles which govern the interpretation of all contracts." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 11, 129 N.M. 698, 12 P.3d 960 (internal quotation marks and citation omitted). Our primary goal is to determine "the intentions of the contracting parties . . . at the time they executed the [policy]." *Id.* "When discerning the purpose, meaning, and intent

of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *CC Hous. Corp. v. Ryder Truck Rental, Inc.*, 1987-NMSC-117, ¶ 6, 106 N.M. 577, 746 P.2d 1109. "Thus, when the policy language is clear and unambiguous, we must give effect to the contract and enforce it as written." *Ponder*, 2000-NMSC-033, ¶11.

**The Insurance Policy**

{5}     Three sections of the policy before us are particularly relevant in resolving this case: Declarations Item Two, "Schedule of Coverages and Covered Autos," Section II(A), "Liability Coverage," and Section II(C), "Limit of Insurance." We look first to the Declarations page, Item Two, entitled "Schedule of Coverages and Covered Autos," which we insert from the original.

ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as Covered "Autos." "Autos" are shown as Covered "Autos" for a particular coverage by the entry of one or more of the Symbols listed in Section 1A of the Coverage Form next to the name of the coverage.

| | Covered "Autos" | COVERAGES | LIMITS OF LIABILITY | | | PREMIUM |
|---|---|---|---|---|---|---|
| LIABILITY | 46 | (1) BODILY INJURY - BI | $ | each person $ | each "accident" | $ |
| | | (2) PROPERTY DAMAGE - PD | $ | each "accident" | | $ |
| | | COMBINED (1) AND (2) - CSL | $ 1,000,000 | each "accident" | | $ 24,665.00 |

{6}     We note particularly the language stating: "This policy provides only those coverages where a charge is shown in the premium column below. Each of these

3

coverages will apply only to those 'autos' shown as Covered 'Autos.'" As noted above, the Declarations page then provides, and sets forth separate premiums for, various kinds of coverages including the liability coverage for bodily injury and property damage at issue in this lawsuit. "Covered Auto" is a defined term in the policy that refers in a separate page to Hamilton's five tractors and six trailers, including both the tractor and the trailer involved in this accident. Accordingly, Northland is clearly liable for the negligence of its insured up to any limits of liability the policy declares. As is evident from the quoted portion of the Declarations page, the policy limits liability coverage to a maximum of "$1,000,000 each 'accident.'"

{7}     Moving beyond the Declarations page to the main body of the policy, the next significant provision, Section II(A) "Liability Coverage," reads as follows:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

4

> We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

{8}     The third relevant policy provision, Section II(C) entitled "Limit of Insurance," then proceeds to define the limit on liability coverage:

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

{9}     Reading the three provisions together, we see that Northland's promise in Section II (A) to "pay all sums an 'insured' legally must pay as damages . . . caused by an 'accident' and resulting from the . . . use of a covered 'auto'," is limited by Section II(C), "the most we will pay for . . . all damages . . . resulting from any one 'accident.'" That limit is "$1,000,000 each 'accident'" as stated on the Declarations page.

{10}     The Luceros read the policy as promising something different. They argue that

5

the policy provides $1,000,000 in liability coverage for each "covered auto" involved in any one accident. Because two "covered autos" were involved in this accident (the tractor and the trailer) and because each "covered auto" carries $1,000,000 in liability coverage, the Luceros contend that the policy limits in this case are $2,000,000, not $1,000,000. The Court of Appeals agreed with the Luceros' position. *See Lucero*, 2014-NMCA-055, ¶ 13 ("Defendant is obligated to provide $1 million in coverage for the tractor involved in the accident and $1 million in coverage for the trailer involved in the same accident, for a total of $2 million in coverage.").

{11}    As authority for their conclusion, the Luceros look first to the Declarations page Schedule of Coverages, previously quoted, which states in part that "[e]ach of these coverages will apply only to those 'autos' shown as Covered 'Autos.'" The Luceros read this as a grant of coverage up to the policy limits of $1,000,000 for each covered auto involved in any accident, including this situation involving two covered autos in one accident. We question whether the policy really grants such expansive coverage.

{12}    First, the policy simply does not say that it grants coverage in the amount of policy limits for each covered auto, each accident. The language does not read, "each of these coverages will apply to [each of] those autos shown . . . ." The language

6

states instead that "[e]ach of these coverages will apply *only* to those 'autos' shown . . . ." It is as if the Luceros would read the word "only" out of the sentence. Textually, the provision is phrased not as a grant but as a limitation: "only" those autos shown on the list of covered autos are eligible for $1,000,000 of liability coverage. There is a critical distinction between a *grant* of coverage and "the *amount* of such coverage." *See Vigil v. California Cas. Ins. Co.*, 1991-NMSC-050, ¶¶ 7-8, 112 N.M. 67, 811 P.2d 565 (emphasis added). Plainly, the Declarations page makes liability coverage available for each of the covered autos, but it does not grant policy limits for each covered auto.

{13} The Declarations page then stipulates that its limit of liability is "$1,000,000 each 'accident.'" Clearly then, liability coverage is not boundless; the policy does not say "$1,000,000 *each covered auto* each accident." The limitation on the Declarations page apparently applies as an outside limit per "accident" without regard to the number of covered autos involved.

{14} Even, however, if there were reasonable grounds for disagreement over the terms of the Declarations page, language in the body of the policy settles the matter. Section II(A) of the policy, previously quoted, states: "Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment

of judgments or settlements." As previously discussed, the Declarations page provides that this limit is $1,000,000 each accident. Section II(C) of the policy then says the same thing in terms of a "per accident" outside limit on what Northland will pay. It states: "Regardless of the number of covered 'autos' . . . or vehicles involved in the 'accident'," the most Northland will pay "for the total of all damages . . . resulting from any one 'accident' is the Limit of Insurance for Liability Coverage shown in the Declarations [$1,000,000 each accident]." Therefore, the argument advanced by the Luceros that the policy provides $1,000,000 in coverage for "each covered auto in each accident" simply does not find support in the language of the policy. The policy limits Northland's exposure to $1,000,000 per accident regardless of the number of covered autos involved in any one accident.

{15}    Importantly, we observe that other jurisdictions interpreting similar insurance clauses have reached a similar conclusion. *See Grinnell Select Ins. Co. v. Baker*, 362 F.3d 1005, 1006 (7th Cir. 2004) ("This is the most we will pay regardless of the number of: 1. 'Insureds'; 2. Claims made; 3. Vehicles or premiums shown in the Declarations; or 4. Vehicles involved in the auto accident."); *Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322, 324-25 (7th Cir. 2010) ("The 'Combined Limit of Liability' provision . . . provides that the per-occurrence limit—$1,000,000—is the most that

8

Auto-Owners will pay, 'regardless of the number of automobiles shown in the Declarations . . . or automobiles involved in the occurrence.'" (second omission in original)); *Suh v. Dennis*, 614 A.2d 1367, 1370 (N.J. Super. Ct. Law Div. 1992) ("Regardless of the number of covered 'autos', 'insureds', premiums paid, claims made, or vehicles involved in the 'accident', the most we will pay for all damages resulting in any one 'accident' is the Limit of Insurance for Liability Coverage shown in the Declarations."); *United Servs. Auto. Ass'n v. Baggett*, 258 Cal. Rptr. 52, 54 (Ct. App. 1989) ("This is the most we will pay regardless of the number of: 1. Covered persons; 2. Claims made; 3. Vehicles or premiums shown in the Declarations; or 4. Vehicles involved in the auto accident." (internal alterations omitted)); *United Servs. Auto. Ass'n v. Wilkinson*, 569 A.2d 749, 751-52 (N.H. 1989) ("Regardless of the number of covered *autos, insureds,* claims made or vehicles involved in the *accident, our* limit of liability is as follows: . . . The most *we* will pay for all damages resulting from *bodily injury* to any one person caused by any one *accident* is the limit shown in this endorsement for 'each person'."); *Banner v. Raisin Valley, Inc.*, 31 F. Supp. 2d 591, 592 (N.D. Ohio 1998) ("The limitation of liability section clearly states that the limit applies regardless of the number of vehicles involved in the accident."). The Luceros offer little contrary authority.

{16} The Luceros, focusing on the precise language and phrasing of Section II(C), put forward a different theory of that section's intent, essentially arguing that the limits of that section simply do not apply when two covered autos are involved in one accident. For ease of reference, we state the Limitation of Insurance clause once more.

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for . . . any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations [$1,000,000 each accident].

{17} The Luceros point out that "[r]egardless of the number of covered 'autos'" as stated in Section II(C) does not say "regardless of the number of covered autos *involved in the accident*." The Luceros argue that since the phrase is not tied to covered autos involved in the accident, then the phrase should be read as, "regardless of the number of covered autos *not involved in the accident*."

{18} This interpretation, according to the Luceros, makes the phrase an anti-stacking clause and not a limit on per-accident liability. Anti-stacking clauses are typically designed to prevent the insured from aggregating (stacking) policy limits that apply to covered vehicles that are *not* involved in the particular accident. *See Lucero*, 2014-NMCA-055, ¶ 19. Here, the Luceros are not trying to aggregate (or stack) policy

10

limits for covered autos *not* involved in the accident; they seek to aggregate the limits provided for each of the covered autos that *is* involved in the accident. Therefore, the Luceros argue that the limits referred to in Section II(C) do not apply to this particular circumstance where more than one covered auto is involved in a single accident.[1]

{19}    Of course, the Limitation of Insurance clause does use the term "involved in the accident" after the word "vehicles" ("[r]egardless of the number of . . . vehicles involved in the 'accident'"). The Luceros argue that the term "involved in the 'accident'" only modifies "vehicles" and not any of the antecedent terms before it—like covered autos ("[r]egardless of the number of covered 'autos'"). The Luceros note the absence of a comma between "claims made" and "or vehicles involved in the accident."[2] The Luceros point out that "covered autos" is specifically defined in the

---

[1]We note that while stacking generally involves aggregating the policies of the vehicles not involved in the accident, merely saying a clause is an anti-stacking clause is not alone dispositive. A court should look to the facts of the case and the language as a whole to determine if a clause is actually an anti-stacking clause. *See Progressive Premier Ins. Co. of Ill. v. Kocher ex rel. Fleming*, 932 N.E.2d 1094, 1098 (Ill. App. Ct. 2010).

[2]According to the Doctrine of the Last Antecedent, "[e]vidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedent by a comma." Terri LeClercq, *Doctrine of the Last Antecedent: The Mystifying Morass of Ambiguous Modifiers*, 40 Tex. J. Bus. L. 199, 210 (2004) (footnote, internal quotation marks and citation omitted).

11

policy whereas the term "vehicles" is not, and therefore, "vehicles" is intended to refer to something other than "covered autos." Instead, the Luceros argue that "vehicles" is a generic term that refers to all autos and not "covered autos," a debatable assertion given that all "covered autos" must as well be "vehicles."

{20} Thus, argue the Luceros, by putting the term "vehicles" instead of "covered autos" right before the phrase "involved in the accident," Northland must have intended the clause "involved in the 'accident'" to mean that the limits in the Declarations page apply regardless of the number of *other* vehicles involved or claims made against the insured. For example, the limit of liability would be the same if the insured was in an accident with one other vehicle or one hundred other vehicles. Similarly, the limit of liability would be the same whether there were one hundred claims against the insured or one.

{21} But, according to the Luceros, this clause was not intended to modify or limit liability for multiple "covered autos" involved in the accident. In that case, there would be no limit. Northland would have to pay $2,000,000 for two covered autos in one accident, $6,000,000 for six covered autos, even $11,000,000 if all eleven covered autos were somehow involved in a single accident. At the very least, the

12

Luceros' interpretation suggests ambiguity, and ambiguity in contracts should be interpreted in favor of the insured.

{22}    We note that "a contract is ambiguous if a *genuine* doubt appears as to its meaning, that is, if after applying established rules of interpretation, the written instrument remains *reasonably* susceptible to at least two reasonable but conflicting meanings . . . ." 11 Williston on Contracts: *Ambiguity as a prerequisite to interpretation and construction* § 30:4 (4th ed. 2014) (emphasis added) (footnotes omitted). This does not mean that every possible interpretation will lead to an ambiguity. While the Luceros' reading is not entirely implausible, it relies in part on a very technical rule of English known as the Doctrine of the Last Antecedent. *See* LeClercq, *supra*, at 201-02. Such rules may inform our analysis, but they are merely a guide to discerning legislative intent. *Hale v. Basin Motor Co.*, 1990-NMSC-068, 110 N.M. 314, 795 P.2d 1006. We believe our duty is not to impose hyper-technical rules of grammar when interpreting the true intentions of parties to a contract. If that were our duty, then most contracts would be ambiguous.

{23}    From the text of Section II(C), considered as a whole and not parsed too finely, we believe it is clear that Northland intended its "$1,000,000 each 'accident'" limitation to apply "[r]egardless of the number of covered 'autos' . . . or vehicles" that

*are* "involved in the 'accident'." Regardless of that number, not the number of covered autos *not* involved in the accident, the policy proclaims its limit: "[T]he most we will pay for the total of all damages . . . resulting from any one 'accident'" is $1,000,000.

{24}    Reading Section II(C) as a per-accident limit of liability regardless of the number of covered autos involved in the accident, appears to be consistent with the majority of jurisdictions that have addressed this issue. It is also consistent with similar cases in which the tractor and the trailer are both involved in a single accident. *See Munroe*, 614 F.3d at 325 (following the accident of a tractor trailer, the policy unambiguously limits coverage to $1,000,000); *Canal Ins. Co. v. Blankenship*, 129 F. Supp. 2d 950, 953 (S.D. W. Va. 2001) (the policy liability for the truck and trailer was properly limited to $1,000,000 and did not provide for $2,000,000 policy limits); *Carolina Cas. Ins. Co. v. Estate of Karpov*, 559 F.3d 621, 625 (7th Cir. 2009) (although the accident involved a covered tractor and trailer, "[t]he insurance policy clearly and expressly limited [the insurer's] liability to a maximum of $1,000,000 per accident").

{25}    We note three cases that are particularly helpful in deciding this issue. First, in *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29 (Fla. 2000), the Florida Supreme

14

Court construed a limit of liability clause after a tractor-trailer rig caused an accident with a single car. *Id.* at 31-32. Although the Court found that the language of the limitation-of-liability clause in that particular policy was ambiguous, it turned to several cases from other jurisdictions as an example of what the insurer should have done to make its liability limit unambiguous. *Id.* at 33-36. The Florida Court stated:

> In contrast to the clause drafted by Auto-Owners in this case, the limiting provisions of the insurance policies set forth in the recent reported decisions include an introductory qualifying clause that clearly and unambiguously explains that liability coverage is limited to a certain amount "regardless" of the number of vehicles involved in the accident.

*Id.* at 36. *See also State Auto Ins. Co. v. Stinson*, 142 F.3d 436 (6th Cir.1998) (unpublished table decision); *Weimer v. Country Mut. Ins. Co.*, 575 N.W.2d 466, 469 n.6 (Wis. 1998); *Dennis*, 614 A.2d at 1370. The limiting phrase "regardless of the number of vehicles involved in the accident" is of course strikingly similar to Northland's language in this very case.

{26}    Referring to these other cases, the Florida Court then observed,

> The presence of these qualifying clauses evidences an established custom in the insurance industry as to the language used by insurers in drafting clauses where the intent is to limit liability coverage to a single amount, even though multiple insured vehicles are involved in an accident. As these out-of-state cases demonstrate, when multiple insured vehicles are involved in a single accident, a limitation of liability can be achieved by the simple use of a qualifying clause.

15

*Anderson*, 756 So. 2d at 36 (citation omitted).

{27}    We regard this reference to a "custom in the insurance industry" as significant. Because Northland can justifiably rely on limiting phraseology accepted elsewhere to achieve its desired objective, we should proceed cautiously before creating different expectations solely for our state.

{28}    Similarly, the United States Court of Appeals for the Seventh Circuit interpreted a limit-of-liability clause after three sets of tractor-trailers, all owned by the insured, were involved in one accident. *Munroe*, 614 F.3d at 323. The policy contained a combined limit of liability of $1,000,000 per occurrence "'regardless of the number of automobiles shown in the Declarations . . . or automobiles involved in the occurrence.'" *Id.* at 325 (omission in original). The Court found no ambiguity: "While the Munroes attempt to find ambiguity, including in the terms 'automobiles' and 'combined,' these contortions merit little discussion here: applied to the facts of this case, the unambiguous terms of the policy limit the coverage to $1,000,000 for each occurrence, notwithstanding the involvement of three . . . tractor-trailers." *Id.*

{29}    Finally, the United States District Court for the Southern District of West Virginia interpreted a limit of liability clause after a tractor and trailer were involved in a deadly accident. *Blankenship*, 129 F. Supp. 2d at 952. The sole question was

16

whether the policy limit provided $1,000,000 total liability coverage or $1,000,000 for each vehicle. *Id.* The policy contained a clause that read "[r]egardless of the number of . . . **automobiles** to which this policy applies, . . . [t]he limit of liability stated in the schedule of the policy as applicable to 'each **occurrence**' is the total limit of the company's liability . . . ." *Id.* The injured parties claimed that this language was ambiguous "because it does not limit liability to one million dollars per occurrence when more than one covered vehicle is involved in the accident." *Id.* at 953. They suggested that the insurance company should have added the language "'regardless of the number of vehicles *involved in the accident*.'" *Id.* (emphasis added). The Court held that the insurance policy was not ambiguous and provided coverage up to $1,000,000 per occurrence. *Id.* at 956. The Court noted that "[a] court should read policy provisions to avoid ambiguities and not torture the language to create them." *Id.* at 953 (internal quotation marks and citation omitted).

{30}    Thus, we are satisfied that Northland's position appears to be more in line with the "custom" within the industry and the jurisprudence construing it. While that observation is not necessarily dispositive, it does inform our deliberations. The Luceros' position, on the other hand, appears to be almost without supporting authority, at least in terms of cases interpreting similar policy language. In its briefing

17

to this Court, Northland asserted that the Luceros' interpretation of the policy, as adopted by our Court of Appeals, "stands alone among the 50 state judicial systems." *See Grinnell*, 362 F.3d at 1007. Though perhaps somewhat hyperbolic, that statement remains largely unchallenged, and the Luceros have not done much to discredit it.[3]

**CONCLUSION**

{31}   We hold that Northland limited its liability to $1,000,000 for each accident regardless of the number of insured vehicles involved. Accordingly, we reverse the Court of Appeals and affirm the district court's grant of summary judgment in favor of Northland.

---

[3]The Fifth District Court of Appeals for Illinois has found policies ambiguous despite a similar limit of liability clause. *See Kocher*, 932 N.E.2d at 1096 ("'The limit of liability shown on the **Declarations Page** is the most we will pay regardless of the number of: 1. claims made; 2. **covered vehicles;** 3. **trailers** shown on the **Declarations Page;** 4. **insured persons;** 5. lawsuits brought; 6. vehicles involved in an **accident;** or 7. premiums paid.'"). However, the court found the policy ambiguous because the amount in the limit liability in the declarations page was listed more than once. The court specifically distinguished its case with those cases where the amount in the declarations page was listed only once. *Id.* at 1102. In our case, Northland's policy only states the limit of liability once.

18

{32}    **IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**JERRY H. RITTER, Judge**
**Sitting by Designation**

19